# WOODBURN TOOMER *vs.* THE STATE OF MARYLAND.

*Indictment for Sending Threatening Letter to Extort Money— Statement of Name of Person Threatened—Variation Between Counts of Indictment—Evidence—Confession Held to Be Voluntary—Remarks to Jury of Prosecuting Officer—Instruction to Jury—Cruel and Unusual Punishment.*

By Code, Art. 27, sec. 395, it is provided that any person who shall send or deliver, with or without signature, any letter threatening to accuse any person of an offense, or do injury to the person or property of anyone, with intent to extort money, etc., shall be guilty of a felony, etc. *Held,* that in an indictment under this statute, it is not necessary that the name of the person to whom the threatening letter was sent should be set forth in it.

When it appears that the several different counts of an indictment relate to the same transaction, and that the form in which the offense is charged was varied in order to meet the possible evidence, the indictment is not obnoxious to the objection that each count charges a distinct offense.

Upon the trial of an indictment, a witness for the State cannot be asked whether anybody other than the defendant was under suspicion, since that is wholly irrelevant to the question of the guilt or innocence of the accused.

When a threatening letter sent to extort money is set out in the indictment and the letter as offered in evidence shows a variation as to the spelling of a word, that is not a variance, when the meaning of the word is not thereby changed.

The deputy sheriff who arrested the accused did not inform him of the charge, but took him to the office of the State's Attorney before taking him to jail or to a committing magistrate. The State's Attorney said to the accused that he was not obliged to answer questions, and anything he might say would probably not be to his advantage, but might be used against him. *Held,* that a confession then made by the accused in reply to questions was voluntary and admissible in evidence, since it was not extorted by threats or inducements.

Upon the trial of an indictment, charging the accused with having sent a letter threatening to burn the buildings of a certain person unless money be paid to him, the State's Attorney, in addressing the jury, said: "Fires have occurred in this county, buildings have been burned, and it was my duty to act in this matter." *Held,* that the refusal of the trial Court to require the State's Attorney to retract that statement is not a reversible error.

After the jury in a criminal case had returned to their room to consider of their verdict, the foreman sent a note to the trial judge asking if they should consider the prisoner's confession. The judge replied that the testimony concerning the confession was a part of the evidence which the jury was at liberty to consider. *Held,* that this instruction was correct, and did not suggest to the jury that they should consider the evidence of the State to the exclusion of the testimony of the defense, or that it was entitled to more weight.

The sentence of ten years in the Penitentiary imposed upon a prisoner convicted of threatening to burn a man's buildings unless money be paid to him is not a cruel and unusual punishment, the statute authorizing that offence to be punished by confinement in the Penitentiary for not less than two nor more than ten years.

*Decided January 14th, 1910.*

Appeal from the Circuit Court for Harford County (Van Bibber, J.).

The case was submitted to the Court on briefs by:

*Harry S. Carver,* for the appellant.

*Isaac Lobe Straus, Attorney-General,* for the appellee.

Thomas, J., delivered the opinion of the Court.

The appellant was indicted, tried and convicted under section 395 of Article 27 of the Code, and was sentenced to the penitentiary for the period of ten years. There was a demurrer to the indictment and to each count thereof. The section of the Code referred to provides that "Every person who shall knowingly send or deliver, or shall make, and, for the purpose of being delivered or sent, shall part with the possession of any letter or writing, with or without a name subscribed thereto, or signed with a fictitious name, or with any letter, mark or other designation, threatening therein to accuse any person of any crime of an indictable nature under the laws of this State, or of anything, which, if true, would bring such person into contempt or disrepute or to do any injury to the person or property of anyone, with a view or intent to extort or gain any money, goods or chattels or other valuable thing shall be guilty of a felony, and being convicted thereof shall be punished by imprisonment in the penitentiary for not less than two nor more than ten years."

By this section it is made a felony to either knowingly send, deliver or make and, "for the purpose of being sent or delivered,—part with the possession of any letter or writing," etc., threatening therein "to do any injury to the person or property of anyone with a view or intent to extort or gain any money, goods or chattels or other valuable thing."

The first count in the indictment charges that the accused "feloniously did knowingly send a letter without a name subscribed thereto to one A. Henry Strasbaugh in said coun-

ty, by the name and description of Strosbough threatening therein to do an injury to the property of said A. Henry Strasbaugh with a view and intent to extort and gain money from him said A. Henry Strasbaugh, and which letter is as follows, that is to say: 'Strosbough you are requested to leave at this certain place one hundred dollars in small paper money in a small box at the cross roads from Creswel to the Blair pike back of the old tree with the dop out this is to be put there by three o'clock Wednesday, Nov. 25th, and if not there by that time your buildings will all go up in smoke when you least expect it this is to be left there until taken away you will not be warned but once if this is not complied with this will happen." The second count charges that he "feloniously did knowingly *deliver*" said letter to A. Henry Strasbaugh, as in the first count; the third count charges that he "feloniously did knowlingly make and part with the possession of" said letter "for the purpose of being *delivered*" to A. Henry Strasbaugh, etc., and the fourth count charges that he "feloniously did knowlingly make and part with the possession" of said letter "for the purpose of being *sent*" to A. Henry Strasbaugh, etc.

The ground of the demurrer is that the letter does not contain the name of A. Henry Strasbaugh, and the contention of counsel for the appellant is that the prosecuting witness could not, therefore, know that it was intended for him. But if it was sent or delivered to him, or if the accused made and parted with the possession of it for the purpose of having it sent or delivered to him, it obviously can make no difference whether his name is in the letter or not. Suppose the appellant had placed the letter, without any name in it at all, in Mr. Strasbaugh's house where he knew it would be received by him, would not the legitimate inference be that it was intended for him? The means by which such a letter or writing is delivered is immaterial, provided it contains a threat to injure the person or property of the one to whom it is delivered for the purpose mentioned in the statute, and if the letter set out in the indictment was delivered or sent by

the accused, or he made and parted with the possession of it for the purpose of having it sent or delivered to A. Henry Strasbaugh, there can be no question of his guilt under the provisions of the Code. The case of *State* v. *Nutwell,* 1 Gill, 54, presented an entirely different question. There the accused was indicted under a statute forbidding any person accustomed to make and sell distilled spirits or other liquors, "to suffer any free negro or mulatto, or any negro or mulatto servant or slave to be in her or their storehouse, or other houses, wherein he, she or they may be accustomed to sell distilled spirits or other liquors between sunset in the evening and sunrise on the succeeding morning," and the Court held the indictment bad because it did not state the *name* of the slave whom the accused suffered to be in his storehouse, etc., and did not, therefore, sufficiently describe the offense with which the accused was charged.

The demurrer having been overruled, the prisoner moved to quash the indictment on the ground that it contains four counts, each charging a separate and distinct offense. It is the common and approved practice in this State to insert in the indictment several counts, charging the offense in different ways, and to charge in one indictment, in separate counts, two or more felonies growing out of the same transaction. For instance, there may be several counts for larceny, charging the ownership of the property in different persons, and it is usual to have in the same indictment a count for larceny and another for receiving stolen goods. Where there are several counts in the indictment, charging *separate and distinct* offenses, the Court may, in its discretion, require the prosecution to elect upon which count he will proceed, or quash the indictment. That should not be done, however, at the instance of the accused, unless the Court can see that "the charges are actually distinct and may confound the prisoner, or distract the attention of the jury." But the indictment will not be quashed, where it is obvious on its face, "that the several counts relate to the same transaction, and that the variation of the form in which the offense is charged

in the different counts is done with a view to meet the evidence." Now while the statute in question makes it a felony to either send, deliver or make and part with the possession of such a letter or writing for the purpose of having it delivered or sent, it is apparent that the several counts in the indictment relate to the same transaction, and do not charge separate and distinct offenses, and that the motion to quash the indictment was properly overruled. *Wheeler* v. *State*, 42 Md. 563; *State* v. *McNally*, 55 Md. 559; *Stearns* v. *State*, 81 Md. 341; *Hochheimer's Crim. Law & Proc.*, sec. 162; 22 *Cyc.* 394; 1 *Bishop's New Crim. Proc.*, secs. 449-451.

Arthur Hansom, a witness for the State, testified that he was a clerk in A. H. Strasbaugh's store at Creswell, Harford County, Maryland, and that he has known the appellant for about four years; that after the letter set out in the indictment was found, he got the accused to write a letter for him, for the purpose of securing a sample of his writing, and he then produced and identified the note. On cross-examination he was asked the following question: "Was anybody else other than the defendant under suspicion?" The State objected, the Court refused to allow the question to be answered, and the defendant excepted. The purpose of this question is not disclosed by the record, but the fact that other persons were "under suspicion" could not have reflected in any way upon the question of the guilt or innocence of the accused, or have tended to contradict the witness.

, Mr. Strasbaugh testified that on the 25th of November, 1908, he found the letter referred to in the indictment on his barn door, "about three or four feet from the ground, about eight o'clock in the morning," and that it was not there at dusk the evening before. The State then offered the letter in evidence, the defendant objected, and the second exception is to the action of the Court in allowing the letter to be read to the jury. The ground of this exception, as stated in the appellant's brief, is that there is a variance between the letter set out in the indictment and the letter read to the jury; that in the indictment, the letter contains the

word "unbinond," while in the letter offered in evidence it
is "unbenonce," and he relies on the statement in *Wharton's
Am. Cr. Law* (2 ed.), page 123, that "A mere variance of
a letter will not be fatal, even when the tenor is set out, pro-
vided the meaning be not altered by changing the word mis-
spelt into another of a different meaning." In the letter it
is stated that the money must "be put there unbenonce to any-
one but yourself," while in the indictment the money must
"be put there unbinond to anyone but yourself," and there is
no change in the meaning of the word, which was a substi-
tute for *unbeknown,* and it is not, therefore, a fatal variance
under the authority referred to.

The next exceptions are to the admission of the testimony
of the deputy sheriff, Thomas Forsythe, and J. Royston
Stifler, the State's Attorney for Harford County, to a confes-
sion made by the accused in their presence. The deputy
sheriff testified that he arrested the defendant at Fountain
Green, Harford County; that when he arrested him defend-
ant said "What am I arrested for?" To which witness re-
plied: "You will find out when you get to Bel Air;" that he,
witness, did not tell the defendant what he was arrested for,
nor did he read the warrant to him or show it to him; that he
took the defendant to Bel Air and went with him direct to
the State's Attorney's office before taking him to jail or be-
fore a committing magistrate; that no conversation took place
between the witness and defendant or between the State's
Attorney and defendant, except in witness' presence; that
witness, State's Attorney and defendant were the only ones
present in State's Attorney's office; that defendant wasn't
told that he was entitled to be represented by counsel; that
witness can't remember first thing that was said after enter-
ing State's Attorney's office; the defendant was informed
that he did not have to answer any questions and was told
that anything he might say would probably not be to his ad-
vantage but might be used against him; that no inducements
were held out or promises made to him to induce him to make
any statement." Mr. Stifler, the State's Attorney, testified

that the deputy sheriff brought the defendant to his office in Bel Air; "that before talking to defendant witness said to him that he did not have to answer any questions and was told that anything he might say would probably not be to his advantage but might be used against him; that no inducements were held out or promises made to induce him to make any statement."

It is the undoubted and well established rule that before the confessions of the accused are admitted, the Court must be satisfied that they were free and voluntary, and were not "procured by the influence of another under the hope of favor or advantage if made, or fear of harm or disadvantage of some kind, if withheld," and it is equally as well settled that where they were freely and voluntarily made, without any inducements having been offered or threats made, they are admissible. Now the testimony of the deputy sheriff, in whose custody he was from the time he was arrested until he made the confession in the State's Attorney's office, and the testimony of the State's Attorney, is to the effect that no inducements of any kind were offered or promises made; and that the prisoner was told that he was not obliged to answer any question, and that anything that he said would probably not be to his advantage and might be used against him. Without meaning to approve of the method by which the confession of the appellant was obtained, a confession made under such circumstances was clearly admissible. *Nicholson* v. *State,* 38 Md. 140; *Ross* v. *State,* 67 Md. 286; *Biscoe* v. *State,* 67 Md. 6; *Rogers* v. *State,* 89 Md. 424; *Young* v. *State,* 90 Md. 579; *Green* v. *State,* 96 Md. 384; *Birkenfeld* v. *State,* 104 Md. 253.

The next exception is to the refusal of the Court to require the State's Attorney to retract the following statement made by him in his concluding argument to the jury, "Gentlemen of the jury, fires have occurred in this county, buildings have been burned, and it was my duty to act in this matter." It is unquestionably wrong for the State's Attorney in his argument to the jury to refer to any matter not testified to

by the witnesses or disclosed by the evidence in the case, and it is his duty to confine his remarks to the facts in the case, but if every remark made by counsel in the heat of argument, not strictly applicable to the evidence offered, is to be held sufficient ground for reversing a judgment, few convictions would stand. The remarks to which objection was made were simply a statement by the State's officer of his reason for taking action in the case before the jury, and was not a statement of any fact outside of the evidence in the case as a reason for or argument in favor of the conviction of the accused. In the absence of something to show that the jury was misled or influenced to the prejudice of the prisoner by such remarks the lower Court would not have been justified in setting aside the verdict, nor would this Court be warranted in reversing the judgment appealed from. In the case of *Dunlop* v. *The United States,* 165 U. S. 486, the Court said: "If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation." See also *Esterline* v. *State,* 105 Md. 629.

After the jury had retired to their room, the foreman sent the following note to the Court: "Your Honor—Should we consider Toomer's confession before State's Attorney? As one lawyer said his confession amounted to nothing unless the intent was carried out, that is, unless the buildings were burned.

G. W. McComas, Jr., Foreman."

The Court sent the following reply: "The statements made by the State's Attorney and Mr. Thomas Forsythe under oath are a part of the evidence before you and you are at liberty to consider them in reaching a verdict.

GEO. L. VAN BIBBER."

And the seventh exception is to this statement in writing to the jury. In this State the Court is not required to in-

struct the jury, but may do so, and if the instruction is erroneous, and the jury have followed the instruction to the injury of a prisoner he is entitled to have the judgment reversed on appeal. *Forwood* v. *State,* 49 Md. 531; *Swan* v. *State,* 64 Md. 423. But we can see no objection to the instruction given by the Court in this case. The note of the foreman contained this inquiry: "Should we consider Toomer's confession before State's Attorney," and then followed the statement: "As one lawyer said his confession amounted to nothing unless the intent was carried out, that is, unless the buildings were burned." The reply of the Court did not answer the inquiry as to whether the jury should consider Toomer's confession before the State's Attorney, but simply stated that the statements made by the State's Attorney and the deputy sheriff under oath were a part of the evidence before the jury, and that they were entitled to consider them in reaching a verdict. There can be no doubt as to the correctness of this instruction, and it did not, as contended by counsel for the appellant, suggest to the jury that they should consider the evidence of the State to the exclusion of the testimony of the defendant, or that it was entitled to more weight.

The only remaining ground on which the appellant claims the judgment below should be reversed is that it constitutes cruel and unusual punishment. The statute provides that any person convicted of the offense charged in the indictment shall be punished by confinement in the penitentiary for not less than two, nor more than ten years. In the case of *Mitchell* v. *State,* 82 Md. 527, the Court said: "Our law inflicts pain not in a spirit of vengeance, but to promote the essential purposes of public justice. Severity is not cruelty. The punishment ought to bear a due proportion to the offense. Crimes of great atrocity ought to be visited with such penalties as would check, if not prevent, their commission. It is impossible in the abstract to mark the boundaries which separate cruelty from just severity." In that case the defendant was convicted of an attempt to carnally know and abuse a woman-child under the age of fourteen

years, and was sentenced to imprisonment in jail for the term of fifteen years. In the case of *Lanasa* v. *State,* 109 Md. 605, the defendant was convicted of a conspiracy to wilfully and maliciously injure and destroy the property of one Joseph Di Giorgio, and was sentenced to confinement in the Baltimore City jail for the term of ten years, and this Court held that while the sentence was severe it was "not open to the objection of being in the sense of the law cruel or unusual."

It appears from the evidence that the prisoner stated that he also sent a similar letter to Mr. Kirkland. In imposing sentence, the Court must take into consideration the nature of the offense, and the circumstances attending the commission of the crime, and inflict such punishment as will tend to prevent a repetition of it. While, as was said in *Lanasa* v. *State,* the sentence imposed in this case may be severe, it cannot, in view of the nature of the offense, be regarded as unusual or cruel, and we must, therefore, affirm the judgment of the Court below.

*Judgment affirmed.*