### KELLUM *v.* STATE

[No. 225, September Term, 1959.]

*Decided June 30, 1960.*

The cause was argued before Brune, C. J., and Hammond, Prescott and Horney, JJ.

*Charles P. Howard, Jr.,* with whom was *Llewellyn W. Woolford* on the brief, for the appellant.

*James O'C. Gentry, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Henry P. Turner, State's Attorney for Talbot County,* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

James E. Kellum appeals from a conviction for assault and battery upon the verdict of a jury and judgment thereon sentencing him to imprisonment. The "Statement of the Case" contained in his brief states that he and one Marjorie Murray were indicted by the grand jury of Talbot County on a charge of "assaulting and striking one Jack Rider, a sergeant on the Police force of the City of Easton, Maryland, on or about July 25th, 1959," that as a result of a jury trial they were found guilty "with a recommendation for leniency," and that on December 11th, 1959, Kellum was sentenced to five years' imprisonment in the House of Correction, "from which verdict and sentence" he appeals. The State's brief adopts the appellant's "Statement of the Case," [1] and we shall consider it on the basis upon which it is thus presented.

---

1. The above statement of the charge is in full accord with the presentment which preceded the indictment. By the one-count indictment itself, the grand jurors "present that James E. Kellum * * * did unlawfully assault and beat Sgt. Jack Rider * * * with intent to prevent the lawful apprehension and detainer of * * * Kellum for an offense for which * * * Kellum could be legally apprehended and detained; contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State." This charge appears to have been framed with Code (1957), Art. 27, § 386 in mind. This section makes it an offense punishable by 18 months' to 10 years' imprisonment in the penitentiary for any person to "assault or beat any person * * * with intent to prevent the lawful apprehension or detainer of any party for any offense for which said party may be legally apprehended or detained * * *." The transcript does not disclose just how the charge came to be treated as simply one of common law assault and battery. Possibly the statute was considered inapplicable where, as here, the alleged assailant was also

The incident which gave rise to the case occurred in Easton at about 11:45 P. M., on July 25, 1959. The testimony shows that the prosecuting witness, Sergeant Jack Rider of the Easton police force, while patrolling in a police car with Officer Harvey Smith, came upon a car double parked on West Street in Easton. Just what occurred when Rider attempted to have the driver of the car move to an empty parking place is disputed. Rider's testimony is that Kellum, who said he was attempting to put his family in the car, used profane language in telling the driver of the car not to move it, that when Rider attempted to put Kellum under arrest for disorderly conduct and disturbing the peace Kellum used further profanity, resisted arrest, wrestled with Rider, shoved and struck Rider with his hands and pushed him up against the side of the car. The testimony of Officers Smith and Andrew and of Sheriff Granger (the latter two having been summoned as a result of the disturbance which developed) substantially supports Rider's description of the incident. Officer Andrews testified that the defendant used his arms and feet, as well as his hands, in striking Rider. A crowd of some two hundred persons is said to have been present and appears to have been somewhat worked up in at least vocal opposition to the police order to move the double-parked automobile; and the officers, according to their testimony, met with violence from Kellum's co-defendant and at least one other person. Kellum, on the other hand, testified that he at no time struck Sergeant Rider, but rather that Sergeant Rider struck him with his night stick. Kellum also testified that all that he said to Rider was that he wanted to put his family in the car and go home,

---

the person arrested or detained, and any words based upon or referring to the statute may have been regarded as surplusage. We find no attack upon the indictment in the record, and none is made in this Court. If there were any right to attack its validity, it would appear that it has been waived. Code (1957), Art. 5, § 16, and Art. 27, § 606; Maryland Rules, Rules 725 b and 885; *Reynolds v. State,* 141 Md. 637, 639, 119 A. 457, (approved in *State v. Wheatley,* 192 Md. 44, 51, 63 A. 2d 644); *Schanker v. State,* 208 Md. 15, 116 A. 2d 363; *Mazer v. State,* 212 Md. 60, 127 A. 2d 630; *Kares v. State,* 215 Md. 396, 137 A. 2d 712. Cf. *Romans v. State,* 178 Md. 588, 16 A. 2d 642.

that he never used profanity in addressing Rider, but that Rider made an offensive remark when he approached the automobile. Kellum also stated that he did not hear Rider say he was under arrest, and claimed that he was resisting efforts to get him into the patrol car and that he was trying to get free. Kellum's version of the incident was supported by three other witnesses. One of these was Marjorie Murray, who was tried with Kellum, and the jury found them both guilty.

The appellant urges three grounds for reversal of the judgment against him: (1) failure to grant his motion for a directed verdict at the close of the State's case; (2) failure to grant his motion for a directed verdict at the end of the entire case; and (3) the reading by the State's Attorney in his closing argument of a description of a police officer, which may be described as a eulogy of a hypothetical and perhaps somewhat synthesized and idealized police officer.

The appellant's first point is that the trial court should have granted a directed verdict at the end of the State's presentation of evidence. By offering evidence on his own behalf, Kellum, under Rule 738 a of the Maryland Rules, withdrew the motion and therefore we cannot pass on the court's refusal to grant it. See *Reynolds v. State,* 219 Md. 319, 326, 149 A. 2d 774; *Briley v. State,* 212 Md. 445, 129 A. 2d 689; *Bowen v. State,* 206 Md. 368, 111 A. 2d 844; *Strine v. State,* 204 Md. 339, 104 A. 2d 601; *Auchincloss v. State,* 200 Md. 310, 89 A. 2d 605.

The appellant's motion for a directed verdict offered at the close of the testimony (in accordance with Rule 738 a, *supra*) is the basis for his second contention, with which we are unable to agree.

We think that the evidence on behalf of the State was sufficient, if believed, to establish the offense charged against the appellant. "A simple assault under common law is typified by an attempt or offer, with unlawful force or violence, to do a corporal hurt to another." Clark & Marshall, *Law of Crimes* (6th Ed., Wingersky's Revision), § 10.15, p. 642. The statement in *Yantz v. Warden,* 210 Md. 343, 351, 123 A. 2d 601, that "[t]he crime of assault is an attempt by force to injure the person of another" is not inconsistent with the general

statement made in Clark & Marshall just quoted. It was a sufficient definition for the purposes of that case, though not perhaps a full and comprehensive definition of the term, which has substantially (if not exactly) the same meaning in our law of torts as in our criminal law. We are not aware of any possible difference which might affect the result here. See 4 Am. Jur., *Assault and Battery*, §§ 2, 5, 6, pp. 124-125, 127-130. Cf. *Handy v. Johnson*, 5 Md. 450; *Hayes v. State*, 211 Md. 111, 115, 126 A. 2d 576; Restatement, 1 *Torts*, §§ 21, 33. See also IV Blackstone, *Commentaries* (Oxford, 1769), pp. 216-217, as to the likeness of assault and battery as private and public wrongs. Any extended discussion of what constitutes an assault without any physical contact would be academic in this case, since there was immediate physical violence. "Battery" has been stated to be the unlawful beating of another, *Lamb v. State*, 67 Md. 524, 534, 10 A. 208. See also 2 M. L. E. *Assault and Battery*, § 31, and 4 Am. Jur., *supra*, same topic, §§ 2, 6. The Restatement, 1 *Torts*, § 13, in defining battery, uses the words "harmful or offensive contact" rather than "beating." It is well settled that any unlawful force used against the person of another, no matter how slight, will constitute a battery. III Blackstone, *Commentaries* (Oxford, 1768), p. 120; 4 Am. Jur., *Assault and Battery*, § 18, pp. 137-138; Clark & Marshall, *op. cit.*, § 10.15, p. 642.

Applying these rules to the testimony of the officers above stated with regard to Kellum's striking and pushing Rider, we think that, if believed by the jury, it was sufficient to establish the offense charged. On his own testimony it seems clear that Kellum was resisting arrest, and there is no claim that the arrest which he was resisting was unlawful. On the contrary, the testimony points towards a violation of Code (1957), Art. 27, § 122 (disorderly conduct on a public street) committed by Kellum, in the presence of the arresting officers and of a considerable crowd, which was somewhat worked up, as already stated. If, as seems to have been the case (and indeed, as does not seem to be controverted), the arrest was lawful, the use of force to escape arrest was not warranted. *Williams v. State*, 204 Md. 55, 65, 102 A. 2d 714. This is

not such a case as *Sugarman v. State,* 173 Md. 52, 195 A. 324, where the use of reasonable force to escape unlawful arrest was held lawful.

The last contention of Kellum is that it was prejudicial error for the trial court to permit the State's Attorney to read an advertisement from a source not identified at the trial (said to be a magazine called "Police Supplies"), which described police officers in the following terms:

> "Most of them, perhaps, he's just a fellow in a uniform who waves you through a busy intersection * * * but then suddenly one day he is also the man whose safe, skilled hands on an inhalator brings your baby back from the shadow of death. He's the fellow who gave you a parking ticket that day you didn't see the sign * * * but he's also the one who pulled your parents out of the burning, smashed up car. He's the fellow who spoke a bit gruffly the time you went through the stoplight * * * but he's also the genial, friendly guardian the kids look forward to seeing at the school crossing every day. He's the embarrassed, nervous young bachelor who helped bring your first born into the world during that night-marish ride to the hospital. He's the good Samaritan who knows first-hand of the hardships in your town, the broken families, and who digs down into his own thin wallet for the price of a hot meal for the youngsters left without food. He's the bearer of sad tidings when tragedy comes, the untangler of traffic in blizzards, the Solomon who settles squabbles between neighbors. He's the head of a family, who walked into a darkened warehouse the other night and dutifully let the man back in the shadows fire the first shot. It is comforting to know, as we sit in our easy chairs on a wet, stormy evening, that over 200,000 Americans like him have been willing to pin on a badge and agree to make our troubles their troubles."

The appellant argues that the above statement was not

relevant to the issues before the jury, and that the jurors' minds would be prejudiced by the inference that Sergeant Rider had all the virtues of the police officer in the above description. The appellee replies that the reading was not outside allowable scope of argument to the jury.

In *Troomer v. State,* 112 Md. 285, 76 A. 118, the State's Attorney made some remarks about his reasons for prosecuting the defendant, one of them being that there had been other cases of arson in the county. This Court commented (112 Md. at 292-293): "It is unquestionably wrong for the State's Attorney in his argument to the jury to refer to any matter not testified to by the witnesses or disclosed by the evidence in the case, and it is his duty to confine his remarks to the facts in the case, but if every remark made by counsel in the heat of argument not strictly applicable to the evidence offered, is to be held sufficient ground for reversing a judgment, few convictions would stand. The remarks to which objection was made were simply a statement by the State's officer of his reason for taking action in the case before the jury, and was not a statement of any fact outside of the evidence in the case as a reason for or argument in favor of the conviction of the accused. In the absence of something to show that the jury was misled or influenced to the prejudice of the prisoner by such remarks the lower Court would not have been justified in setting aside the verdict, nor would this Court be warranted in reversing the judgment appealed from. In the case of *Dunlop v. The United States,* 165 U. S. 486, the Court said: 'If every remark made by counsel outside of the testimony were ground for a reversal, comparatively few verdicts would stand, since in the ardor of advocacy, and in the excitement of trial, even the most experienced counsel are occasionally carried away by this temptation.' See also *Esterline v. State,* 105 Md. 629." *Glickman v. State,* 190 Md. 516, 60 A. 2d 216, used the same reasoning to support the rejection of a claim of prejudice from a remark that the defendant was a "Philadelphia foreigner." The Court distinguished *Meno v. State,* 117 Md. 435, 83 A. 759, in which a conviction was reversed because the improper statement by the State's Attorney did tend to connect the defendant with the crime. In *Wood v. State,* 192 Md. 643, 65 A. 2d 316, the Court found

88

certain references by the State's Attorney cured by his disavowal, but the Court went on to say (192 Md. at 652): "It is quite true that appeals to class prejudice or to passion are improper and may so poison the mind of jurors that an accused may be deprived of a fair trial. However, unless it appears that the jury were actually misled or were likely to have been misled or influenced to the prejudice of the accused by the remarks of the State's Attorney, this Court will not be justified in reversing a judgment of conviction solely because of intemperate remarks made in the ardor of advocacy. * * * Where, as here, the record convinces us that the statements were unimportant in the course of a tense trial, and not an evidence of a proceeding dominated by prejudice and passion, reversal would not promote the ends of justice."

In the instant case it is clear that the description objected to was not evidence outside the record which tends to connect the defendant with the crime, nor evidence that the trial was dominated by prejudice and passion. While the statement could have been designed to arouse the sympathy of the jury for policemen in general, it is difficult to see how the jury could have been misled or prejudiced against Kellum because of the reading of it. The State in its brief "readily admits that * * * the prosecuting witness may not have all the same qualities and characteristics of the policeman depicted in the above article * * *." We see no reason to suppose that the jury thought otherwise. The jury, representing as it does the collective experience of the community, may be fairly presumed to have known, in general, the varied tasks and lot of a policeman and to have known the essential needs filled by police officers. Though the reading of such an effusion was, we think, certainly not to be commended and should, indeed, not have been permitted in the trial of the case, we are unable to find in it any such persuasive power or significance as might be expected to sway a jury of reasonable intelligence and ordinary human experience. We are, therefore, unable to conclude that any actual prejudice resulted from its reading. Accordingly, we think that a reversal is not called for and that the judgment should be affirmed.

*Judgment affirmed, with costs.*