## ROGELIO EASTMAN v. STATE OF MARYLAND

[No. 164, September Term, 1980.]

*Decided November 10, 1980.*

The cause was argued before MOYLAN, LOWE and WEANT, JJ.

*Victoria Salner Keating, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Nancy Louise Cook, Assistant Public Defender,* on the brief, for appellant.

*Thomas P. Barbera, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Joseph A. Dugan, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

None of the three issues raised by this appeal from convictions by a jury in the Circuit Court for Prince George's County warrants reversal.

## I.

The first concern is that after appellant had failed to file a timely motion to suppress pretrial identification evidence, the trial judge declined a hearing upon an oral motion on the morning of trial. Appellant contends that his counsel's "reasonable expectation" that the case would not be tried constituted good cause for the failure to file timely. To buttress his contention he stresses the fact that the prosecutor agreed not to object and equates that concession to our expressed belief in *Baldwin v. State,* 45 Md. App. 378 (1980), that counsel's reliance upon a prosecutor's agreement that a similar motion could be filed late constituted "good cause" under Md. Rule 736 a.

Our dicta in *Baldwin* was not influenced by the agreement with the State's Attorney that he would not object; rather the "good cause" was the underlying circumstance which led the prosecutor not to object rather than the agreement itself. In *Baldwin* defense counsel was prepared to file his motion propitiously but was deterred at the request of the State's Attorney who was engrossed in a prolonged murder trial and was not prepared to address the difficult issue raised by the motion. The defense in *Baldwin* delayed the filing solely as an accommodation to the State.

In this case the delay was not an accommodation to the State. The prosecutor's agreement not to object was not even sought during the filing time set forth in the rule but occurred well beyond the 30 days within which the motion should have been filed. The failure to file was not remotely for prosecutorial purposes. To the contrary, the agreement not to object appears to have been an agreement not to rub salt in the already exposed wound of appellant; a gentlemanly accommodation to avoid embarrassing

appellant by declining to emphasize the rule violation. Indeed, it was but a week before trial that appellant suggested his intention to move orally to suppress. The prosecutor graciously agreed not to object — and did not.

The only issue then is the "underlying circumstance" whether counsel's

> "... belief, based on a certain amount of reason, that the case would not go forward and be tried,"

constituted "good cause" to avoid the rule's time requirements. Clearly, if such would suffice, the rule would have little or no meaning. The judge's discretion was not abused by holding such a reflection did not constitute "good cause."

## II.

Appellant then complains that:

> "In his closing argument to the jury, the prosecutor remarked:
>
>> I submit that when you take the testimony of those six honest people, and you balance it against what this individual has told you, *and there has been no testimony, ladies and gentlemen, other than his,* I submit to you that counsel in his opening statement to you does not present evidence in the case, and when Mr. Christian told you that Mr. Eastman did not know where he was, that is what Mr. Christian told you. *No evidence has come from the stand on that.* (emphasis added).
>
> Appellant's objection to the comment was overruled, and the prosecutor repeated the point."

We agree with appellant that there can be no comment on a defendant's failure to testify, *Griffin v. California,* 380 U.S. 609 (1965), *rehearing denied,* 381 U.S. 957 (1965); however, when placed in context, the prosecutor did nothing more than point out that appellant had failed to produce evidence

of his lack of knowledge, as had been pronounced by counsel's opening statement:

> "We expect the evidence to show that Mr. Eastman was not arrested for these robberies until August of this year. In other words, it was a time lag of 17 months between the time of the robbery and the time that Mr. Eastman was arrested. For that reason, ladies and gentlemen, we cannot present any evidence as to the content of these crimes. Frankly, my client, when he was arrested in August of this year, could not recall what he was doing on two obscure dates in March of 1978. By the same token, ladies and gentlemen, we will not present an alibi defense, because my client, again, simply lacks the knowledge and the ability to recall as to what he was doing 17 months from the day he was arrested."

Opening statements are to preview what is to come in the way of evidence, not to argue what may be inferred from facts not in evidence. Appellant's counsel implicitly promised to prove that

> "it was a time lag of 17 months between the time of the robbery and the time that Mr. Eastman was arrested,"

allowing the jury to infer that lapse excused the presentation of evidence

> "as to the content of these crimes."

Counsel went further and asserted the *fact* that his

> "client, when he was arrested in August of this year, could not recall what he was doing on two obscure dates in March of 1978."

That too was a fact to be proven, despite his declaration and explanation for not presenting "an alibi defense."

The State's response, emphasizing that counsel's opening

statement's promise of evidence was not evidence, was carefully couched:

> "I would submit to you that the State has presented all the evidence it can to you from six people who have told you truthfully what they observed on two days in March of 1978. The entire defense's case has been Ronald Knight. Ronald Knight, a man who was convicted of the Uniform Narcotic Act in 1973. Shoplifting in 1973. Robbery in 1975. Robbery in 1977. Uttering in 1978. Armed robbery and use of a handgun in 1979, and two counts of forgery in 1979. All those convictions are before you, as the judge has instructed you, to let you folks know exactly how truthful this fellow is. Exactly what an honest upstanding member of our community is now proceeding to tell you.
>
> I submit that when you take the testimony of those six honest people, and you balance it against what this individual has told you, and there has been no testimony, ladies and gentlemen, other than his, I submit to you that counsel in his opening statement to you does not present evidence in the case, and when Mr. Christian told you that Mr. Eastman did not know where he was, that is what Mr. Christian told you. No evidence has come from the stand on that.

> \* \* \*

> MR. DUGAN [prosecutor]: No evidence has come from the witness stand on that point, and you are to disregard his statements."

Unless we are willing to permit unfulfilled promises of evidence in opening statements to stand unanswered, the State cannot be totally precluded from comment. *See Pierce v. State,* 34 Md. App. 654, 661 (1977), *cert. denied,* 280 Md. 732, 734 (1977), *cert. denied,* 434 U.S. 907 (1977). Furthermore, with regard to a defense attorney's comment

on the absence of fingerprint evidence in a criminal case, the Court of Appeals recently held:

"While it is not incumbent upon the State to produce fingerprint evidence to prove guilt, nevertheless, where a better method of identification may be available and the State offers no explanation whatsoever for its failure to come forward with such evidence, it is not unreasonable to allow the defendant to call attention to its failure to do so." *Eley v. State,* 288 Md. 548 at 554 (1980).

If it is not unreasonable to permit the defense to comment upon the State's shortcomings in producing prosecutorial evidence, we can hardly preclude a reciprocal right for the State "to call attention" to the failure of a defendant to come forward with that which he promised to produce.

Although appellant's failure to take the stand may have been inferable, in light of the context, such inference would have been strained indeed. A more likely inference was available in appellant's opening statement that he would testify to why he had no alibi. There is not the slightest indication that the State was merely grasping for an opportunity to emphasize the failure to testify. To the contrary, the State carefully avoided any emphasis even by implication.

### III.

Finally, appellant contends that the State should not have been permitted to impeach a defense witness by use of a prior contradictory statement because both statement and responding answers to the examination alluded to appellant's use of drugs, which appellant feels is improper in light of *Ross v. State,* 276 Md. 664 (1976). The trial judge, however, perceived the problem implicit in the examination

and carefully instructed the jury that the testimony was admitted only

> ". . . to test the credibility of the witness. That is the only purpose. That is the only reason I am letting this in.

> The statements that the State's Attorney is making, or the questions that he is asking, and the answers that he is giving, does not, necessarily, mean that it's true, and you should not accept these questions and answers as any reflection on the defendant. This is simply to test the credibility of this witness."

Rather than reciting the testimony here to point out the relevance of the credibility cross-examination, it must suffice that we have reviewed it carefully and find no misuse of the procedure in admitting the prior statement. The trial judge perceptively and carefully provided both appellant and the State an eminently fair forum for exposition of their cases on this issue, as well as throughout the trial.

*Judgments affirmed.*
*Costs to be paid by appellant.*