637 A.2d 501

**Noland Maurice RHEUBOTTOM**

v.

**STATE of Maryland.**

**No. 641, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

Feb. 24, 1994.

336

Gina M. Serra, Asst. Public Defender (Stephen E. Harris, Public Defender on the brief), Baltimore, for appellant.

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Thomas E. Hickman, State's Atty. for Carroll County, Westminster, on the brief), for appellee.

Argued before MOYLAN, BISHOP and MOTZ, JJ.

MOTZ, Judge.

Appellant, Noland Maurice Rheubottom, was convicted by a jury in the Circuit Court for Carroll County of possession of cocaine with the intent to distribute, possession of cocaine, possession of paraphernalia, and common nuisance. He presents the following questions for our review:

1. Did the trial court err in permitting improper closing argument by the prosecutor?
2. Did the trial court err in sentencing Appellant to a mandatory sentence pursuant to Article 27, § 286(d)?
3. Did the trial court err in admitting irrelevant prejudicial evidence?
4. Did the trial court err by preventing appellant from establishing his defense?
5. Did the trial court err in preventing defense counsel from challenging the jury array and in refusing to propound a voir dire question designed to ascertain any prospective juror's knowledge of the publicity surrounding a prior trial?

During closing argument, the prosecutor made the following remarks:

Now, the defense made a big deal about the fact that the wife, Kristie, bought that scanner. Well, ladies and gentlemen, people don't always deal drugs by themselves. Defense wants you believe (sic) that all of this stuff is Kristie's. It's hers. She's got the problem. He didn't do anything. He didn't know about it.

Ladies and gentlemen, I don't buy it. I ask you not to buy it. Frankly, I think that's an absurd proposition.

At this point, defense counsel interrupted with an objection and requested permission to approach the bench. The objection was overruled and his request was denied.

A few minutes later, the prosecutor asserted:

Now, ladies and gentlemen, he isn't a doctor, and there isn't any evidence as to what he does, but that beeper—I carry a beeper. Trooper Heuisler carries a beeper. Most

law enforcement officers carry a beeper, because they're on call for emergency purposes, to serve the public, for whatever reason. Lots of people in business carry beepers. Plumbers carry beepers. Electricians carry beepers. Doctors carry beepers. Lawyers carry beepers. Lots of people carry beepers so they can keep good close contact, communication for emergency purposes, and things like that. It's a good business tool. It makes a lot of sense.

Ladies and gentlemen, a beeper is also used by every drug dealer I've ever known.

Again, defense counsel objected and asked permission to approach the bench and again the trial court overruled the objection and refused the request to approach.

Near the conclusion of the prosecutor's argument, he stated:

Reasonable doubt, as the Judge said, is not a fanciful doubt. It's not a whimsical doubt. It's a doubt based on reason. Ladies and gentlemen, you will need to articulate and be able to write down on a piece of paper why and what your doubt is, if you've got one, and if you can't do that, specifically, then there's not a reasonable doubt.

Defense counsel objected still again and asked to approach the bench; again the objection was overruled and the request denied. The prosecutor continued,

The Judge told you . . . to make the same decision in this case, use the same standard, if you will, that you would in your ordinary lives, and we all are faced with choices. We make decisions. There are always consequences to whichever decision we make. Nothing's perfect. Nothing's positive. So, don't go back in the Jury room and think you gotta be positive.

Put reasonable doubt in the proper perspective. Consider the evidence, and unless you've got a pretty good reason why you think the person's not guilty, unless you can articulate that reason, unless it is a significant reason, I submit to you it's not a reasonable doubt.

Shortly thereafter, at the conclusion of the prosecutor's argument, defense counsel again asked to approach the bench.

This time the request was granted. Defense counsel then moved for a mistrial—claiming that the three statements of the prosecutor to which he had previously objected were improper. When the motion was denied, defense counsel asked for cautionary jury instructions; that request was denied, because, the court explained, "it's argument." Before us, appellant again asserts that each of the three objected to remarks was improper.

■ Appellant argues that the prosecutor's statement that he did not "buy" the defense claim that appellant's wife, and not appellant, was the guilty party, was improper injection of his own beliefs by the prosecutor. A prosecutor is not "to assert his personal belief or personal conviction as to the guilt of the accused, if that belief or conviction is predicated upon anything other than the evidence. . . ." *Cierco v. State*, 200 Md. 614, 620–21, 92 A.2d 567 (1952) (quoting *Riggins v. State*, 125 Md. 165, 174, 93 A. 437 (1915)). *See also Eastman v. State*, 47 Md.App. 162, 164–66, 422 A.2d 41 (1980). On the other hand, it is the prosecutor's "undisputable right to urge that the evidence convinces his mind of the accused's guilt." *Id.* It appears to us that, in context, what the prosecutor was really saying, albeit somewhat infelicitously, was that, in his view, the evidence did not support the defense theory. Accordingly, the circuit court did not err in overruling the defense's objection to this remark.

■ Similarly, the second statement also appears, in context, to be innocuous. That comment, *i.e.*, all drug dealers the prosecutor has ever known use beepers, is asserted to be improper argument of a fact not in evidence. A prosecutor "in his argument to the jury [is not] to refer to any matter not testified to by the witnesses or disclosed by the evidence in the case. . . ." *Wilhelm v. State*, 272 Md. 404, 414, 326 A.2d 707 (1974) (quoting *Toomer v. State*, 112 Md. 285, 292–93, 76 A. 118 (1910)). To be sure, there was no evidence at trial as to what drug dealers the prosecutors "had ever known" or what their practice vis á vis beepers was, but there was evidence that it was not uncommon for drug dealers to use beepers.

Moreover, not "every remark made by counsel in the heat of argument, not strictly applicable to the evidence offered, is . . . ground for reversing a judgment." *Wilhelm,* 272 Md. at 414, 326 A.2d 707 (quoting *Toomer,* 112 Md. at 293, 76 A. 118).

The prosecutor's third statement, assertedly "explaining" reasonable doubt, is much more troublesome. Some of the prosecutor's explanation of reasonable doubt was entirely accurate, *e.g.,* it is "not a fanciful doubt" or a "whimsical doubt." On the other hand, the prosecutor also told the jurors that in order to have a reasonable doubt they would "need to articulate and be able to write down on a piece of paper why and what your doubt is . . . and if you can't do that, specifically there's no reasonable doubt;" that explication was, obviously, inaccurate. There is no requirement that jurors be able to "articulate . . . why and what" their "doubt" is, let alone be able to "write" this "down on a piece of paper." Yet, when the defense objected to this statement, the circuit court simply replied, "overruled." That certainly gave the jurors the impression that the prosecutor was correct in stating they must be able to "articulate" and "write down" the basis for their doubts in order for those doubts to be reasonable.

Moreover, the trial court's ruling permitted the prosecutor to repeat immediately thereafter a variation of the improper statement, *i.e.,* "unless you've got a pretty good reason why you think the person's not guilty, unless you can articulate that reason, unless it is a significant reason, I submit to you it's not a reasonable doubt." Furthermore, even though asked to do so, the circuit court also refused to give a corrective instruction after the fact.

It is, of course, true that just because a prosecutor makes an improper jury argument this does not necessarily "constitute reversible error." *Wilhelm,* 272 Md. at 431, 326 A.2d 707 (quoting *People v. Mackins,* 17 Ill.App.3d 24, 308 N.E.2d 92, 110 (1974)). In *Wilhelm,* Judge O'Donnell stated:

There are no hard-and-fast limitations within which the argument of earnest counsel must be confined—no well-

defined bounds beyond which the eloquence of an advocate shall not soar.

*Id.* at 413, 326 A.2d 707. While we do not disagree with that proposition, surely there are also depths into which the unfair argument of a too zealous advocate cannot be permitted to sink.

The rule is that reversal is warranted if "it appears that the jury were actually misled or were likely to have been misled or influenced to the prejudice of the accused." *Wood v. State,* 192 Md. 643, 652, 65 A.2d 316 (1949); *see also Shoemaker v. State,* 228 Md. 462, 473–74, 180 A.2d 682 (1962); *Kellum v. State,* 223 Md. 80, 88, 162 A.2d 473 (1960) (quoting *Wood, supra*). More than twenty-five years ago, Judge Orth, speaking for this Court, pointed out in words that are just as true today:

> In applying this rule it appears that a significant factor in determining whether the jury were likely to have been misled or influenced to the prejudice of the accused by an improper remark is whether the trial court took appropriate action to overcome a likelihood of prejudice, *e.g.,* informing the jury that the remark was improper, striking it and admonishing them to disregard it. When such action, found to be sufficient by the reviewing court, was taken, the judgments were affirmed. And ... where such action was not taken by the trial court, the judgments were reversed.

*Holbrook v. State,* 6 Md.App. 265, 270, 250 A.2d 904 (1969) (citations omitted).

▮ Here the trial judge totally failed to take any appropriate corrective action. He failed to sustain the objection and he failed to admonish the jurors to disregard the remarks.[1]

---

1. Contrary to the State's suggestion, neither the trial court's earlier, proper, reasonable doubt instruction nor its standard instruction that arguments of counsel are "not evidence in the case," cured the possibility of prejudice. *See Johnson v. State,* 325 Md. 511, 519, 601 A.2d 1093 (1992). These instructions were "not enough to defang the prosecutor's" later misstatements as to reasonable doubt and the court "gave no instructions addressed to the challenged remarks of the prosecutor." *Id.* at 520, 601 A.2d 1093. Indeed, in view of the court's overruling of

The failure of the lower court to take such appropriate corrective action in the face of the clearly improper remarks and express request for corrective action, in and itself, was clearly error. *See Johnson v. State,* 325 Md. 511, 520, 601 A.2d 1093 (1992). This error requires reversal unless a reviewing court, upon its own independent review of the record, is " 'able to declare a belief, beyond a reasonable doubt that the error *in no way* influenced the verdict.' " *Id.* at 522, 601 A.2d 1093 (quoting *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976) (emphasis added)).

Although the State's case here was strong, we are not able to so conclude. The State's evidence demonstrated that, when executing a search warrant of his apartment, the police found appellant seated in the living room where they also recovered cocaine, some of which from the sofa where he had been seated; in all, 8.8 grams of powder cocaine, 5.3 grams of crack cocaine, and various pieces of drug paraphernalia, including a police scanner, were found in the apartment. As the police officers were inspecting some of the cocaine to determine if it was powder or crack cocaine, appellant volunteered that "it's all powder." Obviously, this evidence provided a very strong case against appellant as to the possession charges. Nevertheless, the defense did not concede possession. Rather, the defense admitted that appellant was in the apartment when the cocaine was found but argued that the cocaine and paraphernalia belonged to his wife, who also lived in that apartment, and that he did not know of these items until the police uncovered them. In support of this theory, he offered the testimony of a Radio Shack manager who identified a receipt for the purchase of a police scanner bought at Radio Shack; the receipt indicated the purchase was made by appellant's wife.

Furthermore, regardless of the strength of the case against appellant on the possession charges, as the prosecutor himself

---

defense objections and refusal to issue any curative instruction, the jury may well have concluded that the prosecutor's argument was somehow entirely consistent with these earlier instructions from the judge.

conceded in opening argument, there was no "evidence [*i.e.*, witness] that says he [appellant] sold it [the cocaine found in his apartment]." A police officer did testify that appellant volunteered, at the time he was arrested, that, "[i]f I had lots of money, I wouldn't be doing stuff like this, selling dope." On the other hand, the officer testified that appellant also assertedly said, at the same time, that he did not "keep dope in his place" and "never sells out of it." The cocaine found in the apartment was apparently not packaged in small individual bags as is often the case when possession with intent to distribute is charged. The defense emphatically asserted that appellant had not distributed cocaine and that there was no evidence that he had. Perhaps because appellant did not testify, his counsel heavily relied on the principle that his guilt had to be established beyond a reasonable doubt. In light of these facts, we cannot conclude that the error in permitting the prosecutor's improper closing argument was harmless beyond a reasonable doubt.

Moreover, there is an additional factor present in the case at hand that leads us to conclude that reversal is the only appropriate remedy here; namely, misstatement of the critical "reasonable doubt" standard was at the heart of the improper argument here. Just a few months ago, the Court of Appeals discussed, at some length, the "constitutionally mandated" reasonable doubt standard and the significance of correct explanation of that standard. *See Wills v. State*, 329 Md. 370, 376, 620 A.2d 295 (1993). The incorrect explanation of the reasonable doubt standard led the Court to reverse convictions of distribution and conspiracy to distribute cocaine, because the trial court had instructed the jury that a "nagging doubt" was not a reasonable doubt. *Id.* at 388, 620 A.2d 295. Similarly, last year in *Sullivan v. Louisiana*, 508 U.S. ——, ——, 113 S.Ct. 2078, 2083, 124 L.Ed.2d 182 (1993), the Supreme Court unanimously held that jury instructions as to reasonable doubt are so critical that a constitutionally deficient reasonable doubt instruction is a "structural error" that is never amenable to harmless error analysis. There is no asserted error in the trial court's reasonable doubt instruction

in the case at hand and we do not intimate for a minute that counsel's argument is the equivalent to a judge's instruction. The discussions of the reasonable doubt standard and holdings in *Sullivan* and *Wills* do suggest, however, that when, as here, the prosecutor misstates that standard, this is a particularly serious error that should be corrected as soon as possible by the trial court.[2]

For all of these reasons, the prosecutor's reasonable doubt remarks require reversal and remand for a new trial here. In light of this conclusion, we need not reach appellant's arguments with regard to the enhanced sentence or the challenge to the jury array, which well may not arise on retrial. For the benefit of the circuit court and the parties on retrial, we will, however, briefly address appellant's remaining two claims.

Both are evidentiary arguments. First, appellant contends that the trial court admitted irrelevant prejudicial evidence—an evidence inventory form that contained a list of all evidence removed from appellant's apartment. Along with controlled dangerous substances and drug paraphernalia, also seized from the apartment and listed on the evidence inventory form were bicycles, electronic equipment, cameras, a vacuum cleaner, a telephone, and similar items. Appellant was not charged with any offense related to these items.

Portions of the form referring to the bicycles, etc. were clearly irrelevant. Moreover, failure to exclude a form listing these irrelevant items could conceivably be prejudicial, *i.e.*, it could have suggested to the jury that appellant stole the items. Accordingly, introduction of lists of irrelevant items should be avoided. It seems to us, however, that clearly no prejudice occurred here. Rather, defense counsel used the overkill of seized items in closing argument to suggest to the jury that they were not at all indicative of drug trafficking but

---

**2.** The significance of the reasonable doubt standard, and apprehension about misstatements of it, have led some federal courts to hold that a trial court's refusal to instruct as to reasonable doubt or to permit counsel to define it in argument is not error. *See, e.g., United States v. Headspeth,* 852 F.2d 753 (4th Cir.1988).

rather suggested improper police conduct. This argument was so effective that the prosecutor was forced not only to concede during rebuttal argument that the listed items "were not relevant to this proceeding" and do not have "any bearing here" but also to argue that their seizure did not indicate that the police "somehow did something wrong." [3]

■ Appellant's final argument is that the trial court erred in refusing to permit police officers to testify that: (1) they had the means to, but did not, conduct a dog "sniff" of the apartment and (2) when two or three days after appellant's arrest his wife visited him at jail, the police did conduct a dog sniff of her car and the dog gave a "positive reaction" to the presence of drugs in the car. Appellant maintains that this evidence was critical to prove his claim that "the narcotics belonged to appellant's wife, not appellant." In fact, the proffered testimony would have done nothing of the kind.

The fact that appellant's wife may have possessed some drugs two or three days *after* his arrest does not in any way prove that at the time of his arrest, she possessed the cocaine found in the sofa of appellant's apartment, in which appellant alone was seated. *See Harris v. State,* 324 Md. 490, 492–504, 597 A.2d 956 (1991). Moreover, even if the evidence had been probative of the wife's constructive possession of the cocaine, which the police seized from the apartment, that evidence could not have materially aided appellant's defense. The State's theory of prosecution was that appellant and his wife jointly and constructively possessed the cocaine; the proffered evidence would have done nothing to negate the theory of joint and constructive possession.

JUDGMENTS REVERSED AND CASE REMANDED TO THE CIRCUIT COURT FOR CARROLL COUNTY FOR A NEW TRIAL.

COSTS TO BE PAID BY CARROLL COUNTY.

---

**3.** Because of the possibility of prejudice absent this argument of counsel, the better course on retrial would be to admit into evidence only a redacted inventory form.

BISHOP, Judge, dissenting.

I agree with the majority that the State's argument with reference to reasonable doubt was improper and that the court's failure to take some action was error; however, I do not agree that that error was harmful. For this reason I dissent.

As stated on page 343 of the majority opinion, when the police executed a search warrant on appellant's apartment, they found appellant seated in the living room. The police recovered various amounts of cocaine including some cocaine that had been hidden in the sofa where the appellant was seated. Further, while the police were attempting to determine whether the cocaine was powder or crack, the appellant volunteered that, "it's all powder." Appellant told the police that he knew something was going to happen on that day and that "if I had lots of money, I wouldn't be doing like this, selling dope." The total amount of cocaine recovered from the apartment was over fourteen grams; 8.8 grams of powder cocaine and 5.3 grams of crack cocaine. In addition to the cocaine a small black case containing a hand-held scale, a scanner, a pager, and $415 in cash was found by the police.

Despite the fact that some cocaine was found in the sofa where the appellant was sitting; that the appellant was able to advise the police of the nature of the cocaine; that the appellant admitted to the police that he sold "dope;" and, that the amount of the cocaine recovered from the apartment was more than adequate to conclude that it was there for distribution purposes, the majority reasons

regardless of the strength of the case against appellant on the possession charges, as the prosecutor himself conceded in opening argument, there was no "evidence [*i.e.*, witness] that says he [appellant] sold it [the cocaine found in his apartment]." A police officer did testify that appellant volunteered, at the time he was arrested, that, "If I had lots of money, I wouldn't be doing stuff like this, selling dope." On the other hand, the officer testified that appellant also assertedly said at some time that he did not "keep dope in

his place" and "never sells out it." The cocaine found in the apartment was apparently not packaged in small individual bags as is often the case when possession with intent to distribute is charged. The defense emphatically asserted that appellant had not distributed cocaine and that there was no evidence that he had. Perhaps because appellant did not testify, his counsel heavily relied on the principle that his guilt had to be established beyond a reasonable doubt. In light of these facts, we cannot conclude that the error in permitting the improper closing argument was harmless beyond a reasonable doubt.

I find this reasoning specious. For example, the fact that the prosecutor in opening argument conceded that there was no evidence that appellant actually sold cocaine and subsequently asserted that he did not "keep dope in his place" and "never sells out it" does not in any way dispute the facts. The appellant did not contradict his statement that "he sold dope." All that he said was that he did not keep it in his place and that he never sells it out of his place. The majority seems to believe that whenever a person is convicted of distribution that person must have in his possession the small individual baggies used in the sale of narcotics. Over fourteen grams of cocaine is available in one place for one reason only—to sell it. Clearly, the appellant was in possession of the cocaine. The emphatic assertion by the defense that appellant "had not distributed cocaine and that there was no evidence that he had," used by the majority as a basis for its holding of harmful error, is not a fact but simply an assertion that most defendants charged with this crime make.

The majority cites *Wills v. State,* 329 Md. 370, 620 A.2d 295 (1993), and comments: "[t]he incorrect explanation of the reasonable doubt standard led the Court to reverse convictions of distribution and conspiracy to distribute cocaine, because the trial court had instructed the jury that a 'nagging doubt' was not a reasonable doubt." What is not contained in the majority opinion is the following summary of the evidence against Wills:

The fate of Wills turned on whom the jury believed. The State adduced evidence tending to show that an undercover officer asked Wills whether Wills could procure three bags of crack for the officer. Wills said he could, walked over to another man and was given three bags of what proved to be crack. Wills disputed this account. He testified that he was framed and that the police account was a fabrication. A longtime acquaintance and distant relative of Wills testified that he had been told by a nark that the police were out to get Wills for selling drugs.

*Id.* at 388, 620 A.2d 295. Immediately the Court followed with its concluding statement that, *"[i]n the circumstances,* we cannot say, without reservation, that the erroneous instruction did not contribute to the jury's guilty verdicts. Therefore, under the test we adopted in *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976), the error was not harmless. Wills is entitled to a new trial." *Id.* [329 Md.] at 388, 620 A.2d 295. (emphasis added.) It was not, as the majority contends, "the importance of the reasonable doubt standard that led" to the reversal in *Wills,* but, rather, the fact that the evidence showed only a one on one confrontation between Wills and the undercover officer plus testimony that the police were "out to get Wills."

I believe that the order in which the Court set out its concluding paragraphs in *Wills,* at 388, 620 A.2d 295, is significant. First there was a summary of the relatively little evidence against Wills and then the conclusion that, based on that evidence, the Court could not say "without reservation, that the erroneous instruction did not contribute to the jury's guilty verdicts." It is clear, when comparing the amount of evidence in *Wills* with that in the case *sub judice,* that there was substantially more evidence against Rheubottom than there was against Wills. It was not only the importance of the reasonable doubt standard in *Wills* that brought about the reversal, but it was equally the lack of the overwhelming evidence that is present in the case *sub judice.*

The majority contends that "[t]he discussion of the reasonable doubt standard in *Wills* does suggest, however, that

when, as here, the prosecutor misstates that standard, this is a particularly serious error that should be corrected as soon as possible by the trial court." *Wills* did not involve a misstatement by the prosecutor, but rather an erroneous instruction by the trial court. The court's failure in the case *sub judice* to correct the prosecutor's misstatement is irrelevant, if harmless error beyond a reasonable doubt.

I believe that the improper statements made by the prosecutor and the judge's error in failing to act were harmless error and, beyond a reasonable doubt, did not in any way contribute to the guilty verdict. The jury was advised that argument of counsel did not amount to evidence and that the jury was to make their decision based upon the evidence submitted and the instructions given by the court. Holding as the majority does in this case, amounts to giving to closing argument of counsel the same weight as the Court of Appeals gave to the Court's erroneous instruction in *Wills v. State,* 329 Md. 370, 620 A.2d 295 (1993).

For the above reasons I dissent, and I would affirm the conviction.