## HILL *v.* STATE

[No. 19, September Term, 1958.]

*Decided October 23, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Harry Goldman, Jr.,* with whom was *Calvin E. Cohen* on the brief, for the appellant.

*James H. Norris, Jr., Special Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, J. Harold Grady, State's Attorney for Baltimore City, Joseph G. Koutz* and *Paul Wartzman, Assistant State's Attorneys,* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The appellant, Hill, when arraigned in the trial court, was not represented by counsel. He pleaded guilty to a narcotics-law violation, admitted a prior conviction of a similar offense, and was sentenced as a second offender to the maximum authorized prison term, which is ten years. This appeal (in which he is represented by court-appointed counsel) is from the judgment and sentence.

The indictment was in four counts. The first two counts charged, respectively, possession and control of a narcotic drug in the City of Baltimore on November 8th, 1957. The third and fourth counts of the indictment, as found by the grand jury, each alleged conviction of a prior narcotics offense in the District of Columbia on October 16th, 1953, and charged, respectively, the current offenses of possession and control on November 8th, 1957.

The record shows that the defendant was served with a copy of the indictment on the day on which it was filed, that this was two days before his arraignment, and that he stated at the arraignment that he had received a copy. (See Rule 723 a, which is similar to Rule 10 of the Federal Rules of Criminal Procedure.) The clerk then asked him "Do you have a lawyer?" The defendant replied "No, I don't." The clerk next asked "What is your age?" and the defendant replied "35." The clerk then proceeded to state the substance of the first two counts, which charged the current offense, and asked the defendant "[H]ow do you plead, guilty or not guilty?" The defendant answered "Guilty as charged." Then followed a statement by the clerk as to the third and fourth counts, in which he doubtless unintentionally, but nonetheless erroneously, stated the date of the alleged prior conviction as that of the current offense. The judge then

inquired whether the date of the alleged prior conviction stated by the clerk was correct. The defendant replied that it was not and in answer to a further question said that it had been in 1953. The State then sought leave to amend, to which the accused expressed his consent. Thereupon the court directed the clerk to make the amendment by interlineation, and the latter proceeded to do so, and mistakenly changed the date of the current offense from 1957 to 1953. The record shows no formal plea to the third or fourth counts.

The appellant contends: that the failure of the trial court to advise him of his right to obtain counsel was a violation of the first sentence of Rule 723 b of the Maryland Rules; that errors and omissions in the proceedings, including the failure of the trial court so to advise him, deprived him of his liberty in violation of the Federal and State Constitutions; that there is no showing of any election—certainly of no informed election—to proceed without counsel, and that he was entitled under the second sentence of Rule 723 b relating to "capital * * * or other serious cases" to have counsel appointed for him if (as he asserts) he was indigent. He further claims that the lack of counsel in this case did involve such an element of unfairness in bringing about his confinement as to constitute a denial of due process of law in violation of both the Federal and State Constitutions. He also urges that failure of the trial court to advise the defendant of the consequences of a plea of guilty invalidates the proceedings; and finally, that the proceedings would not in any event support a sentence as a second offender.

We think that the judgment and sentence must be reversed for non-compliance with Rule 723 b and c, relating to arraignments, which read as follows:

"b. *Assignment of Counsel.*

If the defendant appears in court without counsel, the court shall advise him of his right to obtain counsel. Unless he elects to proceed without counsel, the court shall, in all capital cases or other serious cases, assign counsel to defend him.

"c. *Record to Show Compliance.*
The record shall affirmatively show compliance
with this Rule."

The record fails to show affirmatively, as required by Rule
723 c, that Rule 723 b was complied with; on the contrary,
it seems to show that it was not. This is a direct appeal, not
a *habeas corpus* case. Hence cases of the latter type, in
which it has been held that the burden is on the petitioner, in
order to establish lack of jurisdiction of the court in which
he was tried, to show that as a result of his not being rep-
resented by counsel, some element of unfairness operated
actively in the process which resulted in his confinement, are
not applicable. (See, for example, *Truelove v. Warden,* 207
Md. 636, 115 A. 2d 297; *Shaffer v. Warden,* 211 Md. 635,
126 A. 2d 573; *Meleganich v. Warden,* 213 Md. 648, 132 A.
2d 130.)

There is an extensive annotation on the duty to advise an
accused as to the right to the assistance of counsel in 3 *A. L. R.*
2d 1003. Since the decisions in *Johnson v. Zerbst,* 304
U. S. 458, *Walker v. Johnston,* 312 U. S. 275, and *Glasser
v. United States,* 315 U. S. 60, construing the Sixth Amend-
ment to the Federal Constitution, the rule with regard to the
right to counsel of a defendant in a criminal prosecution in
a Federal court is as it is now succinctly stated in Rule 44
of the Federal Rules of Criminal Procedure. This Rule,
which the Advisory Committee commented was "a restate-
ment of existing law", reads as follows: "If the defendant
appears in court without counsel, the court shall advise him
of his right to counsel and assign counsel to represent him at
every stage of the proceeding unless he elects to proceed
without counsel or is able to obtain counsel."

As Judge Hammond pointed out in *Truelove v. Warden,
supra,* 207 Md. 636, 638, 115 A. 2d 297, with regard to state
prosecutions: "As a fundamental matter, it is well settled
that the Federal Constitution does not compel a state to fur-
nish counsel as a matter of right, as is required by the Sixth
Amendment in federal prosecutions; that the 'Lack of coun-
sel at state non-capital trials denies federal constitutional

protection only when the absence results in a denial to accused of the essentials of justice.' *Gallegos v. Nebraska,* 342 U. S. 55 [at 64]." The above passage was quoted in *Shaffer v. Warden,* 211 Md. 635, 637, 126 A. 2d 573, and the *Shaffer* case was also cited in *Meleganich v. Warden,* 213 Md. 648, 651, 132 A. 2d 130, both of which cases are relied upon by the State in the present case. See also *Betts v. Brady,* 316 U. S. 455, and *Bute v. Illinois,* 333 U.S. 640.

In *Betts v. Brady, supra, Coates v. State,* 180 Md. 502, 25 A. 2d 676, then recently decided, was referred to. In the *Coates* case this Court held, in an opinion written by Chief Judge Bond (whose denial of the petition for a writ of *habeas corpus* in *Betts v. Brady* was reviewed and affirmed), that "counsel should have been appointed [for the accused] as an essential of due process of law." That was not a capital case; it involved six indictments for robbery, one for assault with intent to rob and two burglary cases. Also, the defendant pleaded guilty in two of the robbery cases, in the case of assault with intent to rob and in one of the burglary cases. He was tried before the court without a jury in the other cases, was convicted in each, and was sentenced to a term of ten years in each case, such terms to run consecutively, making a total of ninety years. The judgments in all nine cases, including those in which the accused had pleaded guilty were reversed, motions to strike the sentences were granted and new trials were awarded.

The resemblances and the differences between Rule 44 of the Federal Rules of Criminal Procedure and our Rule 723 b are apparent. Each applies if the defendant appears in court without counsel, and each contains a requirement that the court advise the defendant as to his right to counsel. Each Rule permits waiver of the right to counsel, and the Federal Rule also expressly dispenses with the need to appoint counsel if the defendant is able to obtain counsel. The Rules differ in that the Federal Rule (with the exceptions noted) requires that counsel be assigned in all cases, regardless of the nature or seriousness of the offense or penalty, but the Maryland Rule (apart from waiver and possibly an implied exception if the defendant can obtain counsel) requires the

assignment of counsel only "in capital cases or other serious cases." This difference seems to be founded upon the difference between the Supreme Court's interpretation of the Sixth Amendment to the Federal Constitution and this Court's interpretation of the provision of Article 21 of the Maryland Declaration of Rights, which states the right of a person accused of crime "to be allowed counsel." See *Raymond v. State ex rel. Szydlouski,* 192 Md. 602, 65 A. 2d 285, in which Judge Delaplaine thoroughly reviewed the historical background of that Article.

However, in the *Raymond* case just cited, though failure to appoint counsel for an eighteen-year-old defendant, who was charged with carrying a concealed weapon and with burglary, was held not to be a violation of Article 21 of the Maryland Declaration of Rights, it was held to be a violation of the due process clause of the Fourteenth Amendment.

In *Jewett v. State,* 190 Md. 289, 58 A. 2d 236, the procedural situation was so unusual as to be described as *sui generis.*[1] The important thing for the purposes of this case and the interpretation of Rule 723 b is that the Court, in an opinion by Judge Markell, said (190 Md. at 296-297, 58 A. 2d 236): "We cannot say that mere failure to appoint counsel, without request, or to ask whether appellant desired such appointment was, apart from other circumstances, a denial of due process. Without attempting to trace the tenuous line between what does and what does not constitute due process in this respect, we may say that we think the wise practice, in any serious case, is to appoint counsel unless the accused intelligently waives such appointment in response to [a] question whether he desires it."

Both the *Jewett* case and the *Coates* case are referred to in the Reporter's Notes appended to the Fifth Report of the Rules Committee dated October 3, 1949, in connection with subsections (b) and (c) of what then became, upon adoption,

---

1. The case resulted in a reversal of the conviction and the award of a new trial because "in the state of the record" the court was "unable to say that with respect to aid of counsel and opportunity to obtain counsel and witnesses, he [the defendant] actually received a fair trial." That case, like this, came up on appeal.

Rule 1 of the Rules of Criminal Practice and Procedure. That Rule now constitutes Rule 723, without any change other than renumbering. It may be noted that what is now Rule 723 b follows to a considerable extent a draft proposed under date of September 23, 1948, by the Committee on Civil and Criminal Procedure of the Bar Association of Baltimore City, a copy of which is also appended to the Committee Report of October 3, 1949.

Rule 723 b adopts almost verbatim the suggestion made in the *Jewett* case which is quoted above. It may be added that in so doing it uses the phrase "capital cases or other serious cases," which appears in the *Jewett* case, rather than the language "a capital crime or other *extremely* serious crime," (italics supplied) which will be found in the *Coates* case (180 Md. 509), where the court was considering in what cases the appointment of counsel might be necessary in order to comply with due process under the Fourteenth Amendment. The Rules Committee's preliminary draft of Rule 1 b (see the the Daily Record, May 31, 1948) used the phrase "in all capital cases or other *very* serious cases." (Italics ours.)

The Rules Committee's preliminary draft of Criminal Rule 1 contained no equivalent of what is now Rule 723 c. It is broader in terms and easier of compliance than a provision suggested by the Baltimore Bar Association Committee for inclusion in Rule 1 b that the court should determine of record that the accused had "intelligently elected to proceed without counsel."

As the annotation in 3 *A. L. R.* 2d, above referred to, shows, a few states have taken the view that in the absence of special circumstances which would result in a denial of due process under the Fourteenth Amendment, there is no duty under their constitutions or statutes to advise a defendant of his right to be represented by counsel (p. 1061), and a few hold that there is no duty so to advise a defendant in a non-capital case (p. 1066). A considerably greater number of states— some under constitutional or statutory provisions—hold that there is a duty so to advise a defendant (p. 1036). Some states infer a waiver from the defendant's failure to request

counsel (p. 1070) and others do so from a plea of guilty (p. 1073).

Our Rules of Practice and Procedure have the force of law, until rescinded, changed or modified by this Court or otherwise by law. Md. Const., Art. IV, Sec. 18A. We think that the provision of Rule 723 b that the court shall advise a defendant who appears for arraignment without counsel of his right to obtain counsel is both clear and obligatory. We also think it clear that in the present case there was neither exact nor substantial compliance with its terms or with the terms of Rule 723 c. The latter subsection also precludes, at least on such a record as the present, any inference of a waiver of compliance with Rule 723 b on the basis of a failure to ask for the appointment of counsel or on the basis of a plea of guilty.

On remand the trial court will undoubtedly give consideration to the nature of the offense charged and the possible penalty in determining whether or not it should be regarded as a serious offense within the meaning of the second sentence of Rule 723 b.

The above conclusion makes it unnecessary to decide the other questions suggested.

> *Judgment and sentence reversed and case remanded for a new trial.*

HENDERSON, J., filed the following dissenting opinion.

Under Rule 723, it is provided that if, at the time of arraignment, a defendant appears without counsel "the court shall advise him of his right to obtain counsel", and that the record shall affirmatively show compliance. This Court now holds that the non-compliance in the instant case was reversible error, without consideration of the question whether the error was harmful or prejudicial, and without any showing that it was. The rule as to harmless error is well settled, and the cases illustrating it are legion, but see *Weeks v. State,* 126 Md. 223, 228; *Smith v. State,* 169 Md. 474, 477;

*La Guardia v. State,* 190 Md. 450, 456; *Lenoir v. State,* 197 Md. 495, 503. Cf. *Bruce v. State,* 218 Md. 87.

The record seems to show affirmatively that the defendant had no meritorious defense to the charge of possession and control of heroin on November 8, 1957. The transcript contains the appellant's application to this Court for leave to appeal *in forma pauperis,* in which he sets out at length the alleged errors relied on. In this document, he admits that he was arrested and searched by City police while driving his automobile; that the three police officers, whose names appeared on the back of the indictment of which he received a copy, testified against him before the trial magistrate on preliminary hearing; and that heroin was found in his automobile at the time of his arrest. His objections were to the legality of the arrest, and the lack of "proof that appellant had knowledge of the narcotic drugs being in his automobile." He also complained that the maximum sentence of ten years was "grievous". These objections are obviously without merit.

In the light of his admissions, it can hardly be maintained that counsel could have aided him in establishing his innocence. Perhaps in a complicated case, counsel might be of assistance in explaining the legal effect of an indictment. But in the instant case the clerk correctly summarized it by stating that he was charged with having in his possession, or under his control, a narcotic drug, heroin, on November 8, 1957; and that he was charged as a second offender, having been convicted of a violation of the narcotics laws in the District of Columbia and sentenced to from 20 months to 5 years. The date of the prior offense was correctly shown in the indictment as October 16, 1953, and the accused actually corrected the clerk's mistake in reading the wrong date.

There is no reason to suppose that the accused was not fully aware of the nature of the charge, the possible consequences to him, or the character of the evidence that the State was prepared to produce. It seems clear to me that the guilty plea was voluntary and that the accused understood its effect. It may be inferred that he did not request or desire counsel, because he had no hope of successfully con-

testing the issue. At least there is no showing to the contrary. It has been held that a failure to advise an accused of his right to counsel, or to appoint counsel, is waived by a plea of guilty, at least in the absence of any circumstances tending to show that the plea was not entered intelligently and understandingly. *In re Burson,* 89 N. E. 2d 651 (Ohio), *certiorari denied,* 339 U. S. 969. See also the cases collected in notes, 146 *A. L. R.* 369, and 3 *A. L. R.* 2d 1003, 1061, 1073. In the instant case I think the plea of guilty, under the circumstances, was a sufficient election to proceed without counsel.

The provision of Rule 723 as to the "right to obtain counsel" seems to me to be rather ambiguous, if not misleading. To tell an accused that lawyers are allowed to represent persons charged with crime, in this day and age, would seem to be the statement of a mere truism, unless it were coupled with the further statement that, if he desired to employ counsel, the court would continue the case in order to afford further time in which to do so. If that is its purpose, the Rule does not spell it out. In the instant case it would seem that a continuance would have been useless, for in his application to this Court he states that he was "too poor to obtain a lawyer", although he did not so inform the trial court. The statement seems to imply that he was well aware of his right to obtain counsel, lacking only the funds to do so.

If the Rule means no more than that the accused has a right to be heard by counsel employed by him, the fact that he had been prevented from obtaining counsel, through poverty or otherwise, would make superfluous any advice as to what his right might be if counsel were present, unless he had a further right to demand that counsel be appointed. But the next sentence of the Rule shows clearly that appointment is not required, even if he requests it, except in "capital cases or other serious cases". Under the canon of construction, known as *ejusdem generis,* the word "other" would seem to connote a crime that might fairly be equated to a capital one. In a broad sense, of course, any crime carrying a penalty of incarceration might be described as serious to the accused.

I think the word "serious" must be construed in the light

of its historical genesis.  In *Coates v. State*, 180 Md. 502, the accused was young, ignorant and unfamiliar with court proceedings, and the sentences imposed totalled ninety years. The court pointed out that the accused "faced a possible total imprisonment for life", and equated it to a capital offense. In *Smith v. State*, 180 Md. 529, decided the same day, a sentence of fifty years, imposed after a refusal to appoint counsel, was sustained as not a denial of due process, where there was no unfairness shown.  These cases were followed by *Betts v. Brady*, 316 U. S. 455, decided by a divided court but not since overruled.  Cf. *Crooker v. California*, 357 U. S. 433.  It was there held that a refusal to appoint counsel in a trial for robbery, where the sentence was eight years and the possible maximum sentence ten years, was not a violation of due process in the absence of a showing that the defendant was "at a serious disadvantage through lack of counsel."  In *Jewett v. State*, 190 Md. 289, the real ground of reversal was that no transcript of the record was obtainable nor any adequate substitute therefor.  The court's observation that it is "wise practice" to appoint counsel "in any serious case", throws no light upon the question as to what cases would be serious enough to require appointment, nor does it suggest that the mere failure to appoint counsel, or to ask whether the accused desired counsel, would be a denial of due process, apart from other circumstances.  In *Raymond v. State ex rel. Szydlouski*, 192 Md. 602, the reversal was placed squarely upon a finding that the accused was incapable of representing himself without counsel, although the sentence was for only two years and six months. Ironically enough, on retrial the accused positively refused to be represented by counsel whom the trial court appointed. I gather from these cases that the potential length of sentence is not the controlling factor in determining whether due process is accorded.  The question turns on the fairness of the trial under the particular circumstances.

I cannot believe that this Court, in adopting Rule 723, or the Rules Committee in recommending it, had any intention of extending the privilege of appointment of counsel beyond what is required by due process.  To extend the privilege to

every case would intolerably impede the administration of justice, to no useful purpose. We cannot assume that the trial judges, who hear without juries over 90% of the criminal cases in Baltimore City, for example, are not deeply concerned with what is fair to the defendants, and the protection of their essential rights. They are also in the best position to decide when appointment of counsel is necessary or desirable to meet the ends of justice. If the criterion is to be "the nature of the offense and the possible penalty", as stated in the opinion in the instant case, without regard to other circumstances, it may be observed that even a charge of common assault carries a potential penalty without limit either at common law or by statute. *Heath v. State,* 198 Md. 455, 467; *Yantz v. Warden,* 210 Md. 343, 351.

Nor do I believe that this Court, or the Rules Committee, intended that any violation of the letter of Rule 723, without any showing of prejudice, should call for automatic reversal. The Rule does not so state, and I think the gloss now put upon it should be reconsidered by the Committee, and the Rule revised and clarified. Indeed, the holding imports that failure to comply is not merely a procedural defect, but jurisdictional.

If that be so, then it would seem to follow, despite the Court's disavowal, that the defect might be attacked not only on direct appeal, but on application for a writ of *habeas corpus.* To construe the Rule in terms of the absolute seems to me, in Justice Cardozo's phrase, to "stick in the bark of a harsh and narrow verbalism".