787 A.2d 152

### Robert Allen SMITH

v.

### STATE of Maryland.

### No. 64, Sept. Term, 2000.

Court of Appeals of Maryland.

Dec. 20, 2001.

Nancy S. Forster, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

M. Jennifer Landis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, Judge.

Robert Allen Smith, petitioner, asserts that his federal and state constitutional right against self-incrimination was violated by the prosecutor's comments during closing argument. We agree and shall hold that the prosecutor's remarks were a direct comment on petitioner's exercise of his privilege against self-incrimination. The error was not harmless, and a new trial is therefore in order.

In March, 1998, the home of Mr. and Mrs. Davis was burglarized and several items of property taken. The missing items included: a twenty-two caliber revolver, a shotgun, jewelry, coins, four women's leather jackets, two men's leather jackets, and a pair of leather chaps. On the basement stairs, the police found a shoe print of a person's boot; they found a similar print on a shirt left in the bathroom.

On March 4, 1998, Ridgely police officer Phil Dixon spoke with a person who told him that Smith offered to sell a twenty-two caliber revolver that matched the description of the gun stolen from the Davis' home. Based on this information, the police secured a search and seizure warrant for Smith's home. They found no evidence linking him to the burglary. On March 9, 1998, Officer Dixon interviewed Denise Brown, who told him that she purchased a leather jacket from Smith for twenty dollars. Ms. Brown also said that Smith showed some leather clothing to Richard Greenwood. The police contacted Greenwood, and he told them that he bought a men's leather jacket and leather chaps from Smith. The police then showed the leather clothing to Mr. and Mrs. Davis, who identified it as their property. The police also compared Smith's shoes to the print found at the Davis' home and concluded that it was "an exact match or a near exact match." Smith was arrested. While he was in jail, he telephoned Arkendra Candi. Candi testified at trial that Smith asked her to telephone Denise Brown and offer her a bribe to

change her story and deny receiving the clothing from Smith. Greenwood and Brown also testified at trial.

Petitioner was tried in the Circuit Court for Caroline County before a jury on charges of first degree burglary, conspiracy to obstruct justice, malicious destruction of property, and four counts of theft. Petitioner did not testify and presented no evidence on his behalf. The prosecutor argued in closing argument that:

> "The Judge has said that you can look backwards in this case. Look to see who ends up with the property and then you can work backwards and here if the recent unexplained possession of stolen property allows you to work backwards to conclude, hey, this guy was the thief, this guy was the burglar. In making that conclusion, ask yourself this. *What explanation* has been given to us *by the defendant* for having the leather goods? Zero, none."

The defense objected to the last comment, but the trial court, before the jury, overruled defense counsel's objection, stating: "I think that's a comment on the evidence. Overruled. I think he was as much referring to any explanation to the police."

Smith was convicted by the jury on all counts and sentenced to a term of incarceration. In an unreported opinion, the Court of Special Appeals affirmed. The intermediate appellate court found that "the prosecutor's remarks in closing concerned the lack of evidence to explain, on some legitimate basis, appellant's possession of the Davises' leather clothing and did not concern appellant's failure to testify." Rejecting Smith's argument that the prosecutor commented on his failure to testify, the court reasoned that the prosecutor's comments merely "served to highlight that none of the witnesses who testified at trial could refute or explain the fact that, soon after the burglary, appellant was seen in possession of the Davises' missing leather goods." We granted Smith's petition for a writ of certiorari.[1] *See Smith v. State*, 360 Md. 485, 759 A.2d 230 (2000).

---

1. The petition for writ of certiorari presented two questions:

Before this Court, Smith argues that the prosecutor directly referred to his failure to testify and that this error was not harmless. The State counters that the prosecutor's remark was merely a comment on the lack of evidence to explain Smith's possession of recently stolen property. In the State's view, the prosecutor's comments were made to remind the jury that it could infer that Smith was the thief from his unexplained possession of recently stolen goods.

We begin with a brief discussion of the privilege against self-incrimination. It has long been the law in Maryland that a defendant in a criminal trial need not testify. Comment upon a defendant's failure to testify in a criminal trial was prohibited in Maryland before the United States Supreme Court, in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed2d. 106 (1965), held that the federal constitutional right against compelled self-incrimination prohibits prosecutorial comment on the accused's silence or failure to testify. *See e.g., Woodson v. State*, 325 Md. 251, 265, 600 A.2d 420, 426 (1992) (citing *Barber v. State*, 191 Md. 555, 62 A.2d 616 (1948); *King v. State*, 190 Md. 361, 58 A.2d 663 (1948); *Smith v. State*, 169 Md. 474, 182 A. 287 (1936)). Today, the privilege against self-incrimination is protected by the Fifth Amendment of the United States Constitution,[2] Article 22 of the Maryland Declaration of Rights,[3] and Maryland Code (1957, 1998 Repl.Vol., 2000 Cum.Supp.) § 9–107 of the Courts and Judicial Proceed-

---

"1) Did Fifth Amendment error occur when the prosecution was permitted to argue to the jury that evidence must be 'explained' by the Defendant; and 2) Does Maryland Rule 4–215(e) reasonably require the Court to advise a defendant of his 'right' to proceed *pro se* before forcing the defendant to proceed with unwanted counsel." Because we answer the first question in the affirmative, we do not reach the second question.

**2.** The Fifth Amendment to the United States Constitution states, in pertinent part, that "[n]o person shall ... be compelled in any criminal case to be a witness against himself...."

**3.** Article 22 of the Maryland Declaration of Rights provides as follows: "That no man ought to be compelled to give evidence against himself in a criminal case."

ings Article.[4] *See Woodson,* 325 Md. at 264–65, 600 A.2d at 426 (1992).

Despite our long history of protecting defendants' right not to testify, a prosecutor may summarize the evidence and comment on its qualitative and quantitative significance. *See Wilhelm v. State,* 272 Md. 404, 412–13, 326 A.2d 707, 714 (1974). In closing argument, lawyers have wide latitude to draw reasonable inferences from the evidence, and discuss the nature, extent, and character of the evidence. *See Ware v. State,* 360 Md. 650, 681–82, 759 A.2d 764, 780 (2000); *Degren v. State,* 352 Md. 400, 429–30, 722 A.2d 887, 901 (1999).

In evaluating whether a prosecutor's comments are improper, this Court long ago set forth the following test: is the remark *"susceptible of the inference* by the jury that they were to consider the silence of the traverser in the face of the accusation of the prosecuting witness as an indication of his guilt." *Smith v. State,* 169 Md. 474, 476, 182 A. 287, 288 (1936) (emphasis added).[5] In *Smith,* a trial for bastardy, the

4. Maryland Code (1957, 1998 Repl.Vol., 2000 Cum.Supp.) § 9–107 of the Courts and Judicial Proceedings Article provides as follows:

"A person may not be compelled to testify in violation of his privilege against self-incrimination. The failure of a defendant to testify in a criminal proceeding on this basis does not create any presumption against him."

5. Notwithstanding that *Smith v. State,* 169 Md. 474, 182 A. 287 (1936), has never been overruled or disapproved by this Court, the concurring opinion suggests that we are "resurrrect[ing] a 1936 case." Conc. op. at 367. Merely because a case has not been cited recently does not mean that the case has been overruled. The doctrine of *stare decisis* governs this dispute—*Smith* is controlling law.

The concurring opinion's reliance on *Oken v. State,* 343 Md. 256, 681 A.2d 30 (1996), as support for the proposition that this Court has applied the "necessarily and naturally" test is misleading and includes only a partial quote from that case. In *Oken,* a death penalty post-conviction case, the issue of the appropriate test was never raised. The complete analysis by the Court was as follows:

"We also agree with Judge Levitz that Oken's counsel was not ineffective in failing to object to the comments Oken claims infringed on his right to remain silent. We find that neither of the statements were a comment upon the failure of Petitioner to testify, nor did these statements violate Petitioner's right to a fair trial. To be sure,

prosecutor argued before the jury that "this defendant has sat here all during the trial and has not denied his fatherhood." *Id.* We stated:

"There can be no question of the impropriety of this remark, as it was susceptible of the inference by the jury that they were to consider the silence of the traverser in the face of the accusation of the prosecuting witness as an indication of his guilt. The constitutional provision [Declaration of Rights, art. 22] is 'that no man ought to be compelled to give evidence against himself in a criminal case,' but the statutory law enlarges this privilege by declaring: 'In the trial of all indictments, complaints and other proceedings against persons charged with the commission of crimes and offense * * * the person so charged shall at his own request, but not otherwise, be deemed a competent witness; but the neglect or refusal of any such person to testify shall not create any presumption against him.' "

*Id.*

Maryland is not alone in adopting a test that is highly protective of a defendant's ability to exercise his Fifth Amend-

---

comments on a defendant's failure to testify violate the defendant's constitutional rights. *See Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106, 110 (1965); *Woodson v. State,* 325 Md. 251, 265, 600 A.2d 420, 426 (1992). Reading the prosecutor's closing argument in context, however, we do not believe the statements were comments on Petitioner's right to remain silent. *See King v. State,* 190 Md. 361, 373–74, 58 A.2d 663, 668 (1948) (holding that statement that there was no evidence to refute the State's case was not improper comment on defendant's failure to testify) [*citing Smith v. State,* 169 Md. 474, 182 A. 287 (1936)]; *State v. Ward,* 338 N.C. 64, 449 S.E.2d 709, 729 (1994) (holding prosecutor's remarks were not a comment on defendant's failure to testify, but fair and proper comments on defendant's failure to present any evidence), *cert. denied,* 514 U.S. 1134, 115 S.Ct. 2014, 131 L.Ed.2d 1013 (1995); *see also Eastman v. State,* 47 Md.App. 162, 167, 422 A.2d 41, 43–44 (1980). *Nor* do we find that the jury would naturally interpret the State's argument as a comment on Petitioner's failure to testify. Accordingly, we find that neither of the prosecutor's statements were improper, nor did they violate Petitioner's right to a fair trial." *Id.* at 295, 681 A.2d at 49 (emphasis added). Read in context, *Oken* stands for the proposition that, under *any* test, Oken's right to remain silent was not violated.

ment right to remain silent.[6] The Indiana Supreme Court, for example, rejected the "naturally and necessarily" test, finding that it is the test "which goes the farthest in allowing the prosecution to remark on the accused's silence. . . ." *Rowley v. Indiana,* 259 Ind. 209, 285 N.E.2d 646 (1972). The court adopted a test much like the Maryland *Smith* test:

**6.** The concurring opinion urges this Court to abandon the *Smith* test and to adopt the test adopted in the federal courts and many state jurisdictions, sometimes referred to as the *Morrison–Knowles* test. The test proposed by the concurring opinion is as follows:

> "the standard, unanimously adopted in all federal circuits, for ascertaining when a prosecutor's argument constitutes improper comment on a defendant's exercise of his Fifth Amendment right to remain silent is whether the language used manifestly intended to be a comment on the failure of the accused to testify, or whether the language was of such character that the jury would naturally and necessarily take it to be such a comment."

Conc. op at 363.

The concurring opinion's proposed test has several problems. First, whether the prosecutor *intended* the argument to be a comment on the defendant's exercise of his or her constitutional right has no bearing on the ultimate question: whether the jury would take the remark to be comment on the defendant's Fifth Amendment privilege. The purpose of the no-comment rule is to protect against prosecutorial comment on the privilege, not to punish the prosecutor. Therefore, the crucial question is not the prosecutor's intent, but whether the jury would view the remark as a comment on the privilege. In rejecting the test that addresses the subjective intent of the prosecutor, the Illinois Supreme Court said:

> "It seems quite irrelevant for the purpose of the no-comment rule— protecting unfettered exercise of the right to remain silent—whether or not a prosecutor actually intended to produce an inference of guilt. It is the effect of a remark, not the intent of its speaker, that frustrates a defendant's exercise of the right to remain silent at trial."

*Moore v. Indiana,* 669 N.E.2d 733, 738 (Ind.1996).

Second, this test, which excludes those comments that the jury *naturally and necessarily* takes to be comments on the accused's failure to testify, is, beyond cavil, less protective of the accused's constitutional rights than the *Smith* test, which requires that the comment be susceptible of such interpretation. The concurring opinion complains that the Court has not specified whether the majority test is "a 'fairly susceptible' or 'reasonably susceptible' test." Conc. op. at 370. It is folly to suggest that the Court would adopt a test embracing an "unreasonable" inference by the jury. Obviously, only those statements that are reasonably or fairly susceptible of the inference by the jury are contemplated by the *Smith* test.

"We prefer the test which does not in such an obvious fashion place the burden on the accused to show that the jury *necessarily* took the comment to be related to his failure to take the stand. A more reasonable test, in our opinion, was stated in *Williams v. Wainwright,* 416 F.2d 1042 (5th Cir.1969), where the court stated that it is settled in both Federal and Florida law that:

> A comment made by the prosecuting attorney, directly or indirectly which is subject to interpretation by a jury as a comment upon failure of a defendant to testify has been strictly regarded as an impingement on the substantial right of the defendant."

*Id.* at 648. *See also Moore v. Indiana,* 669 N.E.2d 733 (1996) (recounting the history of the no-comment rule, adhering to the *Rowley* decision, and rejecting *Morrison–Knowles*).

Likewise, the Commonwealth of Massachusetts applies a test similar to the Maryland test as set out in *Smith:* irrespective of the prosecutor's intent, the test is whether the remarks were reasonably susceptible of being interpreted as a comment on the defendant's failure to take the witness stand. *See Commonwealth v. Smith,* 387 Mass. 900, 444 N.E.2d 374, 381 (1983).

Florida also has adopted the "fairly susceptible" test and specifically rejected the "naturally and necessarily" test. When asked by the State to abandon the "fairly susceptible" test, the Supreme Court of Florida held that "the fairly susceptible test offers more protection to defendants than does the federal test, and we decline the state's invitation to adopt the latter [for purposes of the state constitution]." *State v. Kinchen,* 490 So.2d 21, 22 (Fla.1985); *Rodriguez v. State,* 753 So.2d 29, 37 (Fla.2000) ("The 'fairly susceptible' test is a very 'liberal rule.'"). In *Trafficante v. State,* 92 So.2d 811 (Fla.1957), the Supreme Court of Florida stated:

> "[O]ur law prohibits any comment to be made, directly or indirectly, upon the failure of the defendant to testify. This is true without regard to the character of the comment, or the motive or intent with which it is made, *if such comment is subject to an interpretation which would bring it within*

*the statutory prohibition and regardless of its susceptibility to a different construction."*

*Id.* at 814 (emphasis added).

In keeping with the test established in *Smith,* this Court has viewed references to a defendant's failure to testify as violative of a defendant's Article 22 and Fifth Amendment rights. In *Griffin v. State,* which addressed both the trial court's jury instruction and the prosecutor's comment on the defendant's failure to testify, the United States Supreme Court explained the significance of the prohibition against the prosecution's commenting on a defendant's failure to testify:

"For comment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice' which the Fifth Amendment outlaws. It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly. It is said, however, that the inference of guilt for failure to testify as to facts peculiarly within the accused's knowledge is in any event natural and irresistible, and that comment on the failure does not magnify that inference into a penalty for asserting a constitutional privilege. What the jury may infer, given no help from the court is one thing. What it may infer when the court solemnizes the silence of the accused into evidence against him is quite another."

380 U.S. at 614, 85 S.Ct. at 1232–1233, 14 L.Ed.2d 106 (citations omitted).

In the instant case, the prosecutor's remarks to the jury, "what explanation has been given to us *by the Defendant,"* and his answer, "zero, none," referred to the defendant's decision to exercise his constitutionally afforded right to remain silent. The prosecutor did not suggest that his comments were directed towards the defense's failure to present witnesses or evidence; rather, the prosecutor referred to the failure of the defendant alone to provide an explanation. The prosecutor's comments were therefore susceptible of the inference by the jury that it was to consider the silence of the defendant as an indication of his guilt, and, as such, the comments clearly constituted error.

As is suggested above, we cannot conclude that the prosecutor's comments merely addressed the lack of evidence to explain Smith's possession of the leather goods. To so conclude would ignore the prosecutor's explicit reference to the defendant and the insinuated duty of the defendant personally to offer an explanation for his possession of the property. The prosecutor's comment went beyond any qualitative assessment of the evidence in that, when he asked the jury "what explanation has been given to us by the *defendant*," he effectively suggested that the defendant had an obligation to testify at trial. This burden-shifting is contrary to the basic tenets of our criminal justice system, an accusatorial system, where the question is whether the government has met its burden of proof. *See Mitchell v. United States*, 526 U.S. 314, 330, 119 S.Ct. 1307, 1316, 143 L.Ed.2d 424 (1999); *Sullivan v. Louisiana*, 508 U.S. 275, 277–78, 113 S.Ct. 2078, 2080, 124 L.Ed.2d 182 (1993)(explaining that the burden of proving all elements of the offense charged falls on the prosecutor, who must persuade the fact finder beyond a reasonable doubt of the facts necessary to establish each of those elements).

We recognize that prosecutors and judges are permitted to argue or comment that the unexplained possession of recently stolen goods permits the inference that the possessor was the thief. *See, e.g., Grant v. State*, 318 Md. 672, 680, 569 A.2d 1237, 1241 (1990); *Brewer v. Mele*, 267 Md. 437, 449, 298 A.2d 156, 164 (1972); *Cason v. State*, 230 Md. 356, 358, 187 A.2d 103, 104 (1963); *Stapf v. State*, 230 Md. 106, 108, 185 A.2d 496, 497 (1962); *Lewis v. State*, 225 Md. 474, 475–76, 171 A.2d 244, 245 (1961); *Glaros v. State*, 223 Md. 272, 280, 164 A.2d 461, 466 (1960); *Felkner v. State*, 218 Md. 300, 305, 146 A.2d 424, 428 (1958); *Debinski v. State*, 194 Md. 355, 360, 71 A.2d 460, 462 (1950). A majority of courts have held that prosecutors may comment on the uncontradicted nature of the prosecution's evidence *unless* the only person who could have contradicted, denied,[7] rebutted or disputed the evidence was

---

7. Courts have warned about the prosecutor's use of the word "undenied," suggesting that such reference, when the defendant has not

the defendant himself. *See, e.g., United States v. Cotnam,* 88 F.3d 487, 497 (7th Cir.1996); Annotation, *Comment or Argument by Court or Counsel That Prosecution Evidence Is Uncontradicted as Amounting to Improper Reference to Accused's Failure to Testify,* 14 A.L.R.3d 723, 746 (1967); *cf.,* Annotation, *Modern Status: Instruction Allowing Presumption of Inference of Guilt from Possession of Recently Stolen Property as Violation of Defendant's Privilege Against Self–Incrimination,* 88 A.L.R.3d 1178 (1978). In this case, however, the prosecutor went beyond the permissible comment on the absence of the evidence, and impermissibly commented directly on the defendant's failure to testify.

 On the basis of the foregoing, we find that the prosecutor's comments were impermissible. Our inquiry, however, is not at an end. We must address whether the error was harmless. While not every impermissible comment by the prosecutor constitutes reversible error, the State bears the burden of proving that an error is harmless. The State must prove beyond a reasonable doubt that the contested error did not contribute to the verdict. *See Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976).

Petitioner maintains that he was prejudiced by the prosecutor's comments. He also argues that, by overruling defense counsel's objection before the jury and advising the jury that the comment was permissible, the court gave its imprimatur to the prosecutor's insinuation that the jury should penalize Smith for not testifying. *See Good v. State,* 723 S.W.2d 734, 738 (Tex.Cr.App.1986) (stating that that a trial court, by overruling an objection to an improper argument, puts "the stamp of judicial approval" on the improper comments, thus magnifying the possibility for harm).

---

testified, exposes the case to the possibility of reversible error. *See United States v. Sanders,* 547 F.2d 1037, 1043 (8th Cir.1976). In *Sanders,* the court noted that the word "undenied" strongly connotes "that somehow the defendant himself has failed to rebut a particular point of evidence and thus brings a prosecutor perilously close to invading the defendant's right of silence by disparaging his exercise of that right." *Id.* at 1042.

In addition to effectively giving his imprimatur to the State's comment on the defendant's silence, the judge suggested that Smith had some obligation to explain his actions to the police. This Court explicitly has rejected the notion that one's failure to explain events to the police may be construed as evidence of guilt. *See Grier v. State*, 351 Md. 241, 253, 718 A.2d 211, 217 (1998). Furthermore, this comment by the trial judge refers to evidence not in the record.

The State's argument impermissibly commented on appellant's failure to testify. We cannot conclude beyond a reasonable doubt the improper comment did not contribute to the guilty verdict.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR CAROLINE COUNTY AND TO REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS TO BE PAID IN THIS COURT AND THE COURT OF SPECIAL APPEALS BY CAROLINE COUNTY.*

BATTAGLIA, Judge, concurring.

While I concur with the majority's holding—that the prosecutor's comment impinged on the defendant's constitutional right against self-incrimination, and further, that such error was not harmless—I write separately because I believe that the degree of authority with which the majority cloaks the 1936 case of *Smith v. State*, 169 Md. 474, 182 A. 287 (1936), is unsubstantiated by subsequent case law in this Court. Likewise, the case at hand presented this Court with the opportunity to definitively articulate a standard under which prosecutors are confined to operating, and to which courts may look in *effectively* determining whether a defendant's constitutional rights have been infringed; an opportunity upon which, I believe, the majority has failed to capitalize.

The privilege against self-incrimination has historically ensured the integrity of the fundamental premise of our criminal

justice system, i.e. that one is "innocent until proven guilty."
As the Supreme Court eloquently stated, this privilege:

> reflects many of our fundamental values and most noble
> aspirations: ... our preference for an accusatorial rather
> than an inquisitorial system of criminal justice; our fear
> that self-incriminating statements will be elicited by inhu-
> mane treatment and abuses; our sense of fair play which
> dictates a fair state-individual balance by requiring the
> government to leave the individual alone until good cause is
> shown for disturbing him and by requiring the government
> in its contest with the individual to shoulder the entire load;
> our respect for the inviolability of the human personality
> and of the right of each individual to a private enclave
> where he may lead a private life; our distrust of self-
> deprecatory statements; and our realization that the privi-
> lege, while sometimes "a shelter to the guilty," is often "a
> protection to the innocent."

*Murphy v. Waterfront Comm'n of New York Harbor,* 378 U.S.
52, 55, 84 S.Ct. 1594, 1596–97, 12 L.Ed.2d 678, 681–82 (1964)
(internal citations and some quotations omitted).

In the same year the Supreme Court held the Fifth Amend-
ment command that no person "shall be compelled in any
criminal case to be a witness against himself," applicable to
the States through the Fourteenth Amendment, *see Malloy v.
Hogan,* 378 U.S. 1, 6, 84 S.Ct. 1489, 1492, 12 L.Ed.2d 653, 658,
the Court also addressed the scope of this constitutional
guarantee in *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229,
14 L.Ed.2d 106 (1965). The Court held that the Fifth Amend-
ment "forbids either comment by the prosecution on the
accused's silence or instructions by the court that such silence
is evidence of guilt." *Id.* at 615, 85 S.Ct. at 1233–34, 14
L.Ed.2d at 110. The Court condemned this practice as remi-
niscent of the "inquisitorial system of criminal justice," reason-
ing that adverse comments diminished the privilege by making
the assertion of such privilege carry with it a penalty. *Id.* at
614, 85 S.Ct. at 1232, 14 L.Ed.2d at 109–10 (quoting *Murphy,*
378 U.S. at 55, 84 S.Ct. at 1596–97, 12 L.Ed.2d at 681).

The *Griffin* rule squarely covers direct commentary on a defendant's silence. The facts of *Griffin*, however, were unique in that the constitution of the State of California permitted prosecutors and judges to comment on the adverse inferences that may be drawn from a defendant's silence. *See* 380 U.S. at 610 n. 2, 85 S.Ct. at 1230 n. 2, 14 L.Ed.2d at 107 n. 2. At the time *Griffin* was decided, this practice was unusual; in fact, forty-four states had already declared such commentary forbidden. *Id.* at 611 n. 3, 85 S.Ct. at 1231 n. 3, 14 L.Ed.2d at 108 n. 3. Therefore, while the principles that were developed in *Griffin* are both significant and timeless, *Griffin* responded only to the most egregious and obvious violations of the federal Fifth Amendment rights, leaving federal circuits and states to apply the *Griffin* rule to commentary, the constitutional infringement of which was less definite.

The standard, unanimously adopted in all federal circuits, for ascertaining when a prosecutor's argument constitutes improper comment on a defendant's exercise of his Fifth Amendment right to remain silent is whether the language used manifestly intended to be a comment on the failure of the accused to testify, or whether the language was of such character that the jury would naturally and necessarily take it to be such a comment. *See e.g., United States v. Roberts,* 119 F.3d 1006, 1015 (1st Cir.1997); *United States v. Pitre,* 960 F.2d 1112, 1124 (2nd Cir.1992); *Lesko v. Lehman,* 925 F.2d 1527, 1544 (3rd Cir.1991), *cert. denied,* 502 U.S. 898, 112 S.Ct. 273, 116 L.Ed.2d 226 (1991); *United States v. Francis,* 82 F.3d 77, 78 (4th Cir.1996), *cert. denied,* 517 U.S. 1250, 116 S.Ct. 2513, 135 L.Ed.2d 202 (1996); *United States v. Lampton,* 158 F.3d 251, 260 (5th Cir.1998), *cert. denied,* 525 U.S. 1183, 119 S.Ct. 1124, 143 L.Ed.2d 119 (1999); *United States v. Bond,* 22 F.3d 662, 669 (6th Cir.1994); *United States v. Cotnam,* 88 F.3d 487, 497 (7th Cir.1996), *cert. denied,* 519 U.S. 942, 117 S.Ct. 326, 136 L.Ed.2d 240 (1996); *United States v. Jackson,* 64 F.3d 1213, 1218 (8th Cir.1995), *cert. denied,* 516 U.S. 1137, 116 S.Ct. 966, 133 L.Ed.2d 887 (1996); *United States v. Atcheson,* 94 F.3d 1237, 1246 (9th Cir.1996), *cert. denied,* 519 U.S. 1156, 117 S.Ct. 1096, 137 L.Ed.2d 229 (1997); *United*

*States v. McIntyre,* 997 F.2d 687, 707 (10th Cir.1993), *cert. denied,* 510 U.S. 1063, 114 S.Ct. 736, 126 L.Ed.2d 699 (1994); *United States v. Calderon,* 127 F.3d 1314, 1338 (11th Cir.1997), *cert. denied,* 523 U.S. 1033, 118 S.Ct. 1328, 140 L.Ed.2d 490 (1998); *United States v. Catlett,* 97 F.3d 565, 573 (D.C.Cir. 1996).

This test is also used by nearly every state court in resolving claims of improper prosecutorial comment on the defendant's failure to testify.[1] *See e.g. Ex Parte Kenneth Loggins,*

---

1. A minority of states have adopted something akin to a "fairly susceptible" test, finding a violation of the Fifth Amendment privilege when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence. *See Moore v. State,* 669 N.E.2d 733, 739 (Ind. 1996). Interestingly, when applying the "fairly susceptible" test, some of those states have used the second prong of the nearly universal test to articulate the standard by which to determine a constitutional violation. *See e.g. Rodriguez v. State,* 753 So.2d 29, 37 (Fla.2000) *cert. denied,* 531 U.S. 859, 121 S.Ct. 145, 148 L.Ed.2d 96 (2000) (quoting *Marshall v. State,* 473 So.2d 688, 689 (Fla. 4th DCA 1984) (stating that "[a] constitutional violation occurs ... if either the defendant alone has the information to contradict the government evidence referred to or the jury 'naturally and necessarily' would interpret the summation as a comment on the failure to testify")(internal quotations omitted)); *Commonwealth v. Grant,* 418 Mass. 76, 634 N.E.2d 565, 570 (1994) (finding that because the prosecutor's rhetorical questions were not "of such a nature that a jury would naturally and necessarily construe them to be directed to the failure of the defendant to testify," there was no error). That the few courts which have deviated from the majority test have subsequently employed the standard used by most state and federal jurisdictions is an indication of the more workable nature of the majority test.

The minority states' basis for rejecting the majority test, as articulated by Indiana's Supreme Court in *Moore v. State, supra,* and by this Court in the case *sub judice, see* maj. op. at note 6, appears to be rooted in fears which, upon closer review, are unwarranted. The Indiana court claimed that "[t]here may be an understandable impulse to deem intentional comments improper and inadvertent ones valid" because the first prong considers whether the prosecutor manifestly intended the comment to be a reference to the defendant's silence. *Moore,* 669 N.E.2d at 738. I agree with the Indiana court that whether the prosecutor *actually* or subjectively intended to produce an inference of guilt is irrelevant. Contrary to the assertions by the Indiana court and our Court today, the nearly universal test does not suggest or require an inquiry into the prosecutor's *actual* intent.

771 So.2d 1093, 1101 (Ala.2000); *State v. Bracy,* 145 Ariz. 520, 703 P.2d 464, 479 (1985) *cert. denied,* 474 U.S. 1110, 106 S.Ct. 898, 88 L.Ed.2d 932 (1986); *State v. Lemon,* 248 Conn. 652, 731 A.2d 271, 277 (1999); *Shelton v. State,* 744 A.2d 465, 502 (Del.1999) *cert. denied,* 530 U.S. 1218, 120 S.Ct. 2225, 147 L.Ed.2d 256 (2000); *Bowman v. United States,* 652 A.2d 64, 72 (D.C.1994); *LeMay v. State,* 265 Ga. 73, 453 S.E.2d 737, 739–40 (1995); *State v. Melear,* 63 Haw. 488, 630 P.2d 619, 626

Rather, the first prong requires a court to *objectively* consider whether the prosecutor *manifested* such intent; meaning, the prosecutor's comments, taken in the context of the argument, must *outwardly convey or clearly evince* the intent to reference the defendant's silence. To 'manifestly intend' such comment is to make a statement that is readily seen, perceived or understood to be a comment on the failure to testify; it is one that is obvious and direct. *See e.g. United States v. Wagner,* 884 F.2d 1090, 1099 (8th Cir.1989) (finding the prosecutor's reference to the defendant to have clearly been "inadvertent confusion of the names of the three Wagner brothers made in the midst of her recap of the testimony of the two brothers who did take the stand at trial, . . . [t]he reference did not *manifest* an intent on the part of the prosecutor to call attention to Robert's failure to testify")(emphasis added); *United States v. Whitehead,* 618 F.2d 523, 527 (4th Cir.1980) (stating that "[e]ven assuming, as appellants contend, that both the questions and answers were carefully planned by the prosecutor, we believe that their manifest intent, as well as their likely impact on the jury, was confined to a comment on Dowdy's probable veracity while testifying under oath").

Furthermore, while the State of Florida boasts that the "fairly susceptible" test is a "very liberal rule," *see Rodriguez,* 753 So.2d at 37 (quoting *State v. DiGuilio,* 491 So.2d 1129, 1135 (Fla.1986)), upon surveying its application, it does not appear to be significantly more prohibitive of prosecutorial comments than the test applied in the majority of jurisdictions. In fact, the Florida court admits that "despite our repeated admonitions to avoid any comment that is 'fairly susceptible' to interpretation as a comment on silence, [we have] attempted to draw a distinction between impermissible comments on silence and permissible comments on the evidence in the case." *Id.* at 37. The court also acknowledged other "narrow exceptions" to the rule against prosecutorial comments, including where the defendant has asserted a defense of alibi, self-defense, or defense of others, or where the prosecutor's comment was an "invited response," a proper rebuttal to a defense attorney's statement. *Id.* at 38–39. That the minority test has been littered with exceptions and distinctions is arguably indicative of its unworkable nature. If the minority rule is more "liberal" at all, it is arguably not in the scope of its protections, but rather in the manipulation of its applicability.

(1981); *People v. Neal,* 111 Ill.2d 180, 95 Ill.Dec. 283, 489 N.E.2d 845, 857 (1985), *cert. denied,* 476 U.S. 1165, 106 S.Ct. 2292, 90 L.Ed.2d 733 (1986); *Schertz v. State,* 380 N.W.2d 404, 410 (Iowa 1985); *State v. Ninci,* 262 Kan. 21, 936 P.2d 1364, 1384 (1997); *Bowling v. Commonwealth,* 873 S.W.2d 175, 178 (Ky.1993), *cert. denied,* 513 U.S. 862, 115 S.Ct. 176, 130 L.Ed.2d 112 (1994); *State v. Lindsey,* 578 S.W.2d 903, 904 (Mo.1979); *State v. Wiman,* 236 Mont. 180, 769 P.2d 1200, 1203 (1989); *Barron v. State,* 105 Nev. 767, 783 P.2d 444, 451– 52 (1989); *State v. Merrill,* 125 N.H. 479, 484 A.2d 1065 (1984); *State v. Isiah,* 109 N.M. 21, 781 P.2d 293, 296 (1989); *State v. Skeels,* 346 N.C. 147, 484 S.E.2d 390, 393 (1997); *State v. Nordquist,* 309 N.W.2d 109, 119 (N.D.1981); *State v. Conway,* 2 Or.App. 49, 465 P.2d 722, 723 (1970); *Short v. State,* 671 S.W.2d 888, 890 (Tex.Crim.App.1984); *State v. Tucker,* 709 P.2d 313, 315 (Utah 1985); *State v. Zele,* 168 Vt. 154, 716 A.2d 833, 838 (1998); *Johnson v. Commonwealth,* 236 Va. 48, 372 S.E.2d 134, 136 (1988); *State v. Lindvig,* 205 Wis.2d 100, 555 N.W.2d 197, 200 (Wis.App.1996); *Stanton v. State,* 692 P.2d 947, 950 (Wyo.1984).

The Supreme Court has never expressly approved the test. Nevertheless, Justice Stevens, concurring in *United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983), alluded to the test approvingly, stating "[r]eference to uncontradicted portions of the Government's evidence is improper only when the statement will naturally and necessarily be construed by the jury to be an allusion to the defendant's failure to testify." *Id.* at 515 n. 6, 103 S.Ct. at 1983 n. 6, 76 L.Ed.2d at 110 n. 6 (Stevens, J. concurring).

I believe this test, employed overwhelmingly in courtrooms across the nation, is consistent with our unwavering protection of a defendant's rights as guaranteed by Article 24 of the Maryland Declaration of Rights and the Fifth Amendment to the United States Constitution. In fact, this Court recently

---

I believe that a *clearly articulated and practicable standard* often provides more protection to a defendant than a standard which is malleable.

employed standards strikingly similar to the test articulated in nearly all other jurisdictions. In *Oken v. State,* 343 Md. 256, 681 A.2d 30 (1996), *cert. denied,* 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 681 (1997), our Court was tasked with determining the viability of a defendant's ineffective assistance of counsel claim, a primary source of which was his counsel's failure to object to an allegedly improper comment by the prosecutor in summation.[2] In considering whether a prosecutor's comments infringed on the defendant's failure to testify, Judge Raker, writing for this Court, stated, "[r]eading the prosecutor's closing argument in context, however, we do not believe the statements were comments on Petitioner's right to remain silent .. : [n]or do we find that the jury would naturally interpret the State's argument as a comment on Petitioner's failure to testify," which is essentially the same analysis used in all federal and nearly every state court. *Id.* at 295, 681 A.2d at 49 (internal citations omitted).

Despite this Court's recent application of the nearly universal test in *Oken,* the majority prefers to resurrect a 1936 case, *Smith v. State,* 169 Md. 474, 182 A. 287 (1936), as the authoritative case in self-incrimination jurisprudence; unfortunately, such reliance lacks substantiation by subsequent case law in this Court. In the sixty-five years of its existence, *Smith* has been cited infrequently: rarely, in relation to self-incrimination issues as a whole, and never, until today, as the authoritative case or standard by which all self-incrimination questions should be measured. In *Woodson v. State,* 325 Md. 251, 265, 600 A.2d 420, 426 (1992), *Booth v. State,* 306 Md. 172, 227, 507 A.2d 1098, 1126 (1986)(Eldridge, J., dissenting), *cert. granted, in part,* 479 U.S. 882, 107 S.Ct. 269, 93 L.Ed.2d 246 (1986), *and vacated, in part,* 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and *Littreal v. Redwine,* 252 Md. 662, 666, 250 A.2d 894, 896 (1969), this Court *only* cited *Smith* to support the assertion that prior to the Supreme Court's

---

**2.** The prosecutor, in summation stated that, "the defendant said some things through his attorney in opening ..." and that "[his attorney] really doesn't dispute these items." *Oken, supra,* at 293, 681 A.2d at 48.

holding in *Griffin v. California* that the constitutional right against compelled self-incrimination forbids prosecutorial comment on a defendant's failure to testify, our State had prohibited such practice.[3] Not only has our Court declined to employ the *Smith* "test," but the Court of Special Appeals, which reviews a far greater number of claims by defendants that their constitutional right to remain silent has been infringed, has only employed *Smith* once, *see Grace v. State,* 6 Md.App. 520, 522, 252 A.2d 297, 298 (1969), and ostensibly, practitioners have not utilized the *Smith* "test" either, as may be evident from the fact that neither of the parties in the present case proffer the "test" from *Smith* as the standard by which courts should measure a constitutional violation.

While our State can certainly take pride in its longstanding tradition of protecting a defendant's constitutional right against self-incrimination, I do not believe that this Court should now claim that our decision sixty-five years ago also provided a test by which courts have in the past, can in the present, and should in the future, determine whether a defendant's constitutional right was infringed. I find the fact that this Court neglected to apply *Smith* when determining whether the prosecutor's comments infringed on the defendant's constitutional right against self-incrimination in *Oken v. State* to be a valuable insight into the proper weight that should be

---

3. The few other occasions where *Smith* was cited in relation to self-incrimination issues included: *Veney v. State,* 251 Md. 159, 180, 246 A.2d 608, 621 (1968) *cert. denied,* 394 U.S. 948, 89 S.Ct. 1284, 22 L.Ed.2d 482 (1969), where the Court, noting that the factual scenario for *Veney* and *Smith* were similar, virtually block-quoted the entire *Smith* opinion, without emphasizing any particular portion or principle articulated in *Smith;* and *King v. State,* 190 Md. 361, 374, 58 A.2d 663, 668 (1948), after this Court referred to the 1939 Maryland Code, Article 35, Section 4 which provided that the refusal of a defendant to testify must not create a presumption against him. Otherwise, *Smith* was only cited when referring to the portion of the decision discussing harmless error, *see e.g. Wilson v. State,* 261 Md. 551, 570, 276 A.2d 214, 224 (1971), *Hill v. State,* 218 Md. 120, 127, 145 A.2d 445, 449 (1958) (Henderson, J., dissenting), *Lambert v. State,* 197 Md. 22, 29, 78 A.2d 378, 381 (1951), or the effect of a curative instruction by the trial court. *See e.g. Barber v. State,* 191 Md. 555, 566, 62 A.2d 616, 621 (1948); *Wilkerson v. State,* 171 Md. 287, 290, 188 A. 813, 814 (1937).

afforded the *Smith* opinion, particularly when *Oken* was one of the few times this Court had been asked to consider the propriety of a prosecutor's comments.[4] If *Smith* had truly been the pinnacle of self-incrimination jurisprudence, then *Smith* should have been the standard by which the prosecutor's comments were measured in *Oken;* instead this Court in *Oken* chose to measure the prosecutor's comments by a standard nearly identical to that adopted in almost every jurisdiction in this country. It seems peculiar that the *Smith* "test" would not have unmasked itself until today.

Again, while it is true that this Court has resolutely and consistently forbidden comment upon a defendant's failure to testify in a state criminal trial, *see Veney,* 251 Md. at 179, 246 A.2d at 620 (stating, "[i]t is clear that in Maryland comment upon a defendant's failure to testify in a state criminal trial was forbidden long prior to *Griffin v. California* . . .") (internal citations omitted); *Woodson,* 325 Md. at 265, 600 A.2d at 426–427 (demonstrating that both the cases prior to and subsequent to *Griffin* in this State prohibited comments by prosecutors on a defendant's failure to testify); *Oken,* 343 Md. at 295, 681 A.2d at 49 (stating, "[t]o be sure, comments on a defendant's failure to testify violate the defendant's constitu-

---

**4.** The majority attempts to side-step its failure to apply the now-presumed *Smith* "test" in *Oken* by stating that "the issue of the appropriate test was never raised" in *Oken.* I do not dispute the majority's assessment of the issues before the Court in *Oken,* as it is clear that we were tasked with determining whether a defendant's counsel was ineffective because of his failure to object to an allegedly improper prosecutorial comment on the defendant's exercise of his right to remain silent. *See supra* note 2 and accompanying text. That the precise issue of "which test is appropriate" was not raised or addressed in *Oken* does not change the fact that the *Oken* Court *did not apply* the *Smith* "test" when determining whether the prosecutors comment was improper. The Court's failure to employ the *Smith* "test" then reinforces the perception of its seemingly sudden unveiling of the *Smith* "test" now.

That notwithstanding, if the majority's reasoning were to stand, (i.e. *Oken* should somehow be less consequential because the "issue of the appropriate test was never raised"), then its reliance on *Smith* itself would be without merit, because the precise "issue of the appropriate test" was not before the Court in 1936 in *Smith* either.

tional rights"), this Court has not *explicitly* outlined a test by which comments may be measured to determine whether a constitutional violation has occurred. Our historical protections of a defendant's right against self-incrimination are noble indeed, yet I believe that these rights would be better safeguarded if prosecutors and trial courts were guided by a "bright line" standard articulated by this Court. A defendant's constitutional rights are often best protected when prosecutors are provided an inexorable framework under which they must operate. If left with no framework, or if left to operate under the guise of a framework that, in reality, is so fallible as to render the framework ineffectual, a court's protection of constitutional rights is left to a reactionary stance summarized by case after case of harmless error analysis. If we were to allow the government to freely comment on a defendant's silence—in the absence of a definitive framework—by resorting to "he's clearly guilty anyway," our protection of this constitutional right would amount to little more than a technicality, and the right itself would become little more than a "catch 22"—the defendant would be damned if he does testify and damned if he does not.

It is particularly noteworthy that the "test" which this Court employs today is neither the "fairly susceptible" test, nor the "reasonably susceptible" test,[5] but rather, simply the "susceptible" test. A "test" that encompasses everything "susceptible" is not, in my experience, the type of standard under which prosecutors and courts can effectively operate. Relegating self-incrimination jurisprudence to countless exercises of harmless error analysis is not an effective way to protect the rights of defendants.

The constitutional right against self-incrimination is a perennial guarantee assiduously guarded by the courts against violation. As articulated by the Supreme Court in *Boyd v. United States,* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886):

---

5. A handful of jurisdictions in this country have adopted either a "fairly susceptible" or "reasonably susceptible" test. *See supra* note 1.

"It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. *It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.* Their motto should be *obsta principiis.* We have no doubt that the legislative body is actuated by the same motives; but the vast accumulation of public business brought before it sometimes prevents it, on a first presentation, from noticing objections which become developed by time and the practical application of the objectionable law."

*Id.* at 635, 6 S.Ct. at 535, 29 L.Ed at 752 (emphasis added). A prosecutor's comments on a defendant's failure to testify are precisely the "stealthy encroachments" against which this Court is obligated to guard. In light of our legislature's explicit statutory guarantee to be free from adverse inferences, this Court's protection of a defendant's right to remain silent should be particularly vigorous. *See* Md.Code (1957, 1998 Repl.Vol., 2000 Supp.) § 9–107 of the Courts and Judicial Proceedings Article. I believe that the standard recently employed in *Oken* incorporates our consistent and steadfast protection of a defendant's rights and gives prosecutors a consistent "bright line" standard under which to operate. The facts of this case provided our Court with the opportunity to *explicitly* adopt the standard which we employed in *Oken*, and which other jurisdictions around the country have utilized, successfully, for decades. Because I believe this Court should have seized upon this opportunity, I concur in judgment only.